## A07A1445. LOPEZ v. THE STATE.
### (650 SE2d 430)

PHIPPS, Judge.

Pedro Lopez was charged with trafficking in marijuana, possession of marijuana with intent to distribute, possession of methamphetamine, failure to maintain lane, and driving without a valid driver's license. He filed a motion to suppress, which the trial court denied. Lopez then waived his right to a jury trial, and the court decided his guilt at a bench trial based on the evidence presented at the hearing on the motion to suppress. The court convicted Lopez of possession of marijuana with intent to distribute, possession of methamphetamine, and failure to maintain lane. In this appeal of his convictions, Lopez contends that the trial court erred in denying his motion to suppress. We disagree and affirm.

"A trial court's findings of fact with regard to a motion to suppress are accepted as correct on appeal unless clearly erroneous, except in cases where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented."[1] Where, as here, the

---

[8] See *Moore v. State*, supra.

[1] *Raheem v. State*, 275 Ga. 87, 93 (9) (560 SE2d 680) (2002) (citation and punctuation omitted).

evidence presented on a motion to suppress is uncontroverted, the trial court's application of the law to undisputed facts is subject to de novo appellate review.[2]

The evidence introduced at the hearing on the motion to suppress showed that on August 24, 2005, at approximately 9:00 p.m., Georgia State Patrol officer W. S. Chambers was traveling on Interstate 20 when he observed a car driven by Lopez cross over the lane divider three times. As a result, Chambers stopped the car. After he discovered that Lopez spoke little English, Chambers began to communicate with him in rudimentary Spanish in which the officer had been trained. Upon being asked to produce a driver's license and proof of insurance, Lopez handed Chambers a valid driver's license from Mexico but no insurance documentation. Chambers testified that in response to questions, Lopez indicated that the car he was driving belonged to a friend whose name he did not know; that his traveling companion was also a friend whose name he did not know; that he did not know his travel destination; and that, although he resided in Smyrna, he did not know his address.

Chambers testified that although he determined through radio communications with the Georgia Crime Information Center that the vehicle did have insurance, Georgia law at the time required an operator of a vehicle to have proof of insurance in his possession. Chambers, therefore, concluded that Lopez was chargeable with failure to produce proof of insurance, as well as weaving and driving without a valid driver's license. Chambers testified that rather than issue traffic citations to Lopez, he decided to arrest him for these offenses because Lopez did not have a Georgia driver's license and did not know his own address. Chambers explained that he is authorized to arrest a foreign national charged with traffic offenses, unless the country of which the person is a citizen is a member of a certain "license pact agreement" with the United States. According to Chambers, Mexico is not a member of the pact. Additional testimony given by Chambers showed that he decided to have the car towed rather than let the passenger operate it, because the passenger too had only a driver's license from Mexico even though he said that he had been in this country for three years. Moreover, Lopez indicated to Chambers that he did not know the name of the car's owner.

Chambers handcuffed Lopez and placed him in the rear of his patrol car. Chambers advised Lopez's passenger that he was not under arrest, that the car in which he had been traveling was going to be towed, and that he could either return with Chambers to the police station and telephone someone to pick him up or ride with the

---

[2] *McDougal v. State*, 277 Ga. 493, 497 (1) (591 SE2d 788) (2004).

towing operator. After the passenger told Chambers that he wanted to ride with the towing operator, Chambers asked the passenger to wait in the rear of his patrol car.

Chambers and another patrolman who had arrived on the scene performed an inventory of the car before having it towed. Chambers testified that while looking for paperwork in the glove compartment, he began to detect a musky odor as well as the smell of green marijuana. As he and the other officer began to look into the rear of the car, the odors grew stronger. They then looked in the unlocked trunk and found clear bags with dirty laundry, the source of the musky odor. They removed the clear bags and discovered two opaque trash bags underneath. They removed one of the opaque bags. According to Chambers, the bag emitted a strong odor of marijuana. They opened the bag and found approximately 20 smaller Ziploc bags filled with marijuana. They then opened the second bag and discovered that it contained unpackaged marijuana. Continuing with the inventory search, they later found closed plastic containers containing methamphetamine.

1. Although Chambers was not authorized to arrest Lopez for driving without a valid driver's license or for failure to produce proof of insurance, Chambers's arrest of Lopez for weaving was lawful.

Under OCGA § 40-5-20 (a), "[n]o person, except those expressly exempted in [Chapter 5 of Code Title 40], shall drive any motor vehicle upon a highway in this state unless such person has a valid [Georgia] driver's license . . . for the type or class of vehicle being driven." Under OCGA § 40-5-21 (a) (2), however, "[a] nonresident who is at least 16 years of age and who has in his or her immediate possession a valid license issued to him or her in his or her home state or country" is exempt from the state licensing requirement. But OCGA § 40-5-20 (a) also provides that "[a]ny person who is a resident of this state for 30 days shall obtain a Georgia driver's license before operating a motor vehicle in this state."

Lopez had a valid driver's license from Mexico, and Chambers acknowledged that he did not ascertain how long Lopez had been in this country. Therefore, under the circumstances, Lopez's foreign driver's license authorized him to drive the car. Moreover, contrary to the testimony of Chambers, at the time of the traffic stop OCGA § 40-6-10 did not require the owner or operator of a motor vehicle to maintain proof or evidence of minimum liability insurance in the motor vehicle.[3] Nonetheless, Chambers undisputably observed Lopez weaving in and out of his lane as prohibited by OCGA § 40-6-48. As a result, Lopez was chargeable with violation of OCGA § 40-6-48.

---

[3] See OCGA § 40-6-10 (a) (3) (effective July 1, 2005).

OCGA § 17-4-23 (a) . . . reads in pertinent part: "A law enforcement officer may arrest a person accused of violating any law or ordinance governing the operation, licensing, registration, maintenance[,] or inspection of motor vehicles by the issuance of a citation, provided the offense is committed in his presence. . . ."[4]

The question raised in *Brock v. State*[5] was whether a police officer is restricted to making an arrest for a traffic violation solely by means of a citation or whether OCGA § 17-4-23 (a) simply provides police an alternative to custodial arrest for such violations. *Brock* held

that OCGA § 17-4-23 (a) simply gives police the discretion to write a citation but does not preclude physical arrest. OCGA § 17-4-20 permits a police officer to make a warrantless arrest for a crime committed in his presence. This power extends to misdemeanor offenses. The language of OCGA § 17-4-23 (a) that an officer "may arrest" for a traffic violation by means of a citation clearly is discretionary. For the convenience of the motoring public and the police, the Code section gives the officer the option of issuing a citation rather than going through the time-consuming ordeal of a custodial arrest. It does not mandate a citation.[6]

Chambers testified that he arrested Lopez because Lopez had only a foreign driver's license and could not provide his Georgia residential address. Under these circumstances, the officer did not abuse his discretion in deciding to make the custodial arrest.

2. The officer's decision to impound the vehicle was not unreasonable.

Cases supporting the state's right to impound a vehicle incident to the arrest of a person in control of it

are founded on a doctrine of necessity. Thus, where the sole occupant of the vehicle is taken from the car, it would be impractical to leave the vehicle abandoned on the side of the road. The same is true where all occupants of the car are apprehended and none remain to take custody of the car, or where an unsuccessful attempt was made to locate the owner to obtain disposition instructions.[7]

---

[4] *Brock v. State*, 196 Ga. App. 605, 606 (1) (396 SE2d 785) (1990).

[5] Id.

[6] Id. (citation omitted).

[7] *State v. Ludvicek*, 147 Ga. App. 784, 786 (250 SE2d 503) (1978) (citations omitted).

This court has long held "the view that when a driver is arrested and a reliable friend is present who may be authorized and capable of removing the vehicle, or where the arrestee expresses some preference for a private towing service, the rationale for impoundment does not exist."[8] In finding impoundment of a car unreasonable in *Strobhert v. State*,[9] we noted that the officer had neither asked nor given the defendant the opportunity to make alternative arrangements for the removal of the vehicle. "The ultimate test for the validity of the police officer's conduct is whether, under the circumstances then confronting the officer, his conduct was reasonable within the meaning of the Fourth Amendment."[10]

Chambers's refusal to entrust the car to Lopez's passenger was justified, because the passenger did not have a valid Georgia driver's license in apparent violation of OCGA § 40-5-20 (a).[11] And Chambers's ability to afford Lopez the opportunity to make alternative arrangements for removal of the car was hampered by the language barrier between the two and by the fact that Lopez could not even identify the owner of the car. Under these circumstances, we cannot say that Chambers did not properly exercise his discretion in impounding the car.

3. Search of the bags and container containing marijuana and methamphetamine as part of the inventory of the vehicle was authorized.

"The first purpose of an inventory search is the protection of the owner's property while it remains in police custody. . . . The second purpose of an inventory search is the protection of the police against claims or disputes over lost or stolen property. . . ."[12] In *State v. Evans*,[13] we recognized that the inventorying of a closed container in the trunk of a vehicle serves both of these purposes. Therefore, Chambers did not exceed the permissible scope of an inventory search by examining the contents of the bags and container in the car's trunk.

For these reasons, the trial court did not err in denying Lopez's motion to suppress.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

[8] *Strobhert v. State*, 165 Ga. App. 515, 516 (301 SE2d 681) (1983) (citations omitted).
[9] Id.
[10] *State v. Howard*, 264 Ga. App. 691, 693 (592 SE2d 88) (2003) (citation omitted).
[11] Supra.
[12] *State v. Evans*, 181 Ga. App. 422, 424 (2) (352 SE2d 599) (1986) (citations and punctuation omitted).
[13] Id.

DECIDED JULY 30, 2007.

*Jeffrey W. Duncan*, for appellant.
*Donald N. Wilson, District Attorney, Charles E. Rooks, Assistant District Attorney*, for appellee.