[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14253
_____

D.C. Docket No. 8:14-cr-00058-MSS-TBM-2


UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

versus

JON CRAIG NELSON,
MICHAEL SKILLERN,

                                        Defendants - Appellants.



_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(March 8, 2018)

Before MARCUS and NEWSOM, Circuit Judges, and MOORE,[*] District Judge.

NEWSOM, Circuit Judge:

Defendants Michael Skillern and Jon Craig Nelson appeal their convictions for mail fraud, wire fraud, and associated conspiracies, all of which arose out of their efforts to peddle non-existent gold to the public through their company, Own Gold LLC.  Although Skillern and Nelson have raised a number of issues on appeal, our focus in this opinion is on Skillern's contention that the district court deprived him of his Sixth Amendment right to the "Assistance of Counsel" when, just before an overnight recess that occurred while Skillern was on the stand, the court granted his lawyer's request to speak to him "about matters other than his testimony."  Skillern now insists that the Constitution required the district court to go farther and to specify that he could speak to his attorney about *any* topic, including his testimony.

Because Skillern's attorney proposed the very limitation of which he now complains by asking to speak to Skillern "about matters other than his testimony," we are presented with several questions about the nature of and relationship among the various "error" doctrines that pervade federal criminal law—trial error, harmless error, structural error, plain error, and invited error.  In the end, we needn't definitively resolve those questions, because Skillern's Sixth Amendment

---

[*] Honorable William T. Moore, United States District Judge for the Southern District of Georgia, sitting by designation.

argument fails for the separate and more basic reason that, in the circumstances of this case, the district court committed no constitutional error. Under this Court's en banc decision in *Crutchfield v. Wainwright*, 803 F.2d 1103 (11th Cir. 1986), because the record does not reflect that Skillern (or his lawyer) actually wanted or planned to discuss his testimony during the recess, he was not deprived of his Sixth Amendment right to the assistance of counsel.

# I

In 2011, Skillern and Nelson started a company called Own Gold LLC for the purpose of mining, processing, and selling gold. Own Gold's website and marketing materials represented that it was a "gold producer" with mining claims worth some $81 billion. For the next two years Own Gold used a telemarketing firm to execute contracts with hundreds of people who believed that they were actually buying gold. Those contracts specified the amounts of gold purchased and prices, and represented that customers could retrieve their gold ore "at any time after the execution and payment of consideration" by "appear[ing] in person" at the mining site. Otherwise, Own Gold had 360 days to deliver the gold; if it failed to do so, it would refund the purchase price. All told, Own Gold accepted 441 orders and collected more than $7.3 million from customers.

As it turns out, Own Gold's representations about its gold production were, well, *mis*representations. From its inception in 2011 until it stopped executing

3

sales contracts with customers in 2014, Own Gold appears to have produced less than six ounces of gold from its own mining operations. In light of its near-total failure to produce any gold from its own mines, Own Gold resorted to trying to fulfill customers' orders by purchasing gold from third parties. Even so, despite taking orders for 5,912 ounces of gold and accepting more than $7.3 million from its 351 customers, Own Gold ultimately delivered a mere 150 ounces—valued at $241,000—to 20 customers. Own Gold refunded only $35,022 to four customers; none of the other orders was either fulfilled or refunded. Meanwhile, Skillern collected approximately $488,000, Nelson bagged about $300,000, and Own Gold's telemarketing firm netted a whopping $5.1 million over a two-year period.

In February 2014, Skillern and Nelson were indicted for mail fraud, wire fraud, conspiracy to commit mail and wire fraud, conspiracy to launder money, and illegal money transactions in connection with their operation of Own Gold. As particularly relevant here, Skillern testified in his own defense at trial, and his testimony spanned three days. At the end of his first day on the stand, after the jury was excused for the afternoon, his attorney asked the district court, "Your Honor, may I speak to Mr. Skillern about matters other than his testimony this evening?" The court granted the request, stating, "Yes, anything about the proceeding and so forth, who's coming, who is not coming, that's fine, but just not

4

his testimony or his impending testimony." Skillern's attorney responded, "Fine, Your Honor." Nothing more was said about the issue that day.[1]

The jury found both Skillern and Nelson guilty of four counts of mail fraud, four counts of wire fraud, one count of conspiracy to commit mail fraud, and one count of conspiracy to launder money. Skillern was sentenced to 120 months in prison, and Nelson was sentenced to 96 months.

On appeal, Skillern principally asserts that the district court deprived him of the assistance of counsel in violation of the Sixth Amendment. According to Skillern, the court should have responded to his attorney's request to speak to him about "matters other than his testimony" by stating, *sua sponte*, that Skillern and his attorney could discuss any subject—including his testimony—during the overnight break. We now turn to a careful consideration of that issue.

## II

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Supreme Court first considered the parameters of that right in the context of trial recesses that occur during a criminal defendant's

---

[1] At the end of the second day of Skillern's testimony, the district court noted that it had "somewhat of a dilemma" because Skillern was still on the stand but might need to discuss certain facts about another witness with his attorney. The court asked the parties whether they objected to Skillern speaking with his attorney during the overnight break, and they indicated that they did not. The court then instructed Skillern that he was "free to talk to [his] lawyer" about anything that evening. That ruling is not at issue in this appeal.

5

testimony in *Geders v. United States*, 425 U.S. 80 (1976).  The Court held there that a defendant's Sixth Amendment rights were violated when he was precluded from consulting with his attorney "about anything" during an overnight recess between his direct- and cross-examination.  *Id.* at 91.  Similarly, in *United States v. Romano*, this Court found a Sixth Amendment violation when a district court allowed a defendant to speak with his lawyer about some topics, but not his testimony, during a five-day recess in the middle of his testimony.  736 F.2d 1432, 1434–38 (11th Cir. 1984), *vacated in part on other grounds*, 755 F.2d 1401 (11th Cir. 1985).  More recently, though, the Supreme Court held in *Perry v. Leeke* that a district court did *not* violate the Sixth Amendment when it directed a defendant not to consult with his attorney during a 15-minute recess.  488 U.S. 272, 280–85 (1989).

Where, then, does this case fall along the spectrum marked out by *Geders*, *Romano*, and *Perry*?  The limitation on lawyer-client communication here was "worse," so to speak, than in *Perry*, in which the Supreme Court found no Sixth Amendment violation, in that its duration was longer: there, the recess lasted only minutes; here, it spanned an entire night.  In two respects, though, the limitation in this case was not as bad as in *Geders* and *Romano*, both of which found violations: the limitation here was more narrowly circumscribed than in *Geders*, in that Skillern was permitted to talk to his lawyer about issues other than his testimony;

6

and the limitation here persisted for only a fraction of the five days at issue in *Romano*.  So we're somewhere in the middle:  Does it violate the Sixth Amendment to prevent a criminal defendant from discussing his testimony, but not other topics, during a single overnight recess?  Although no existing precedent resolves that precise question, even the Government seems to concede that the answer, at least as a general matter, is probably yes.  *See* Br. of Appellee at 52 ("[T]he district court's limitation here impermissibly constrained Skillern's ability to consult with his attorney during the first overnight recess.").

But there's a wrinkle here—it was Skillern's attorney who actually proposed the limitation that Skillern now challenges.  He specifically asked the district court for permission to speak to Skillern about "matters other than his testimony," and then, when the district court acceded to his request, he never expressed any regret, objection, or desire to clarify.  The parties, naturally, have very different views about the consequences of the phrasing of Skillern's lawyer's request and his subsequent failure to alter it or otherwise object.  For his part, Skillern asserts that a *Geders* violation is a "structural error"—for which "no objection is necessary" and which requires automatic reversal, no questions asked.  The government, at the opposite pole, responds that the Court needn't even consider Skillern's Sixth Amendment argument because his own lawyer "invited" any error.  At the very least, the government contends, we should review the issue only for "plain error"

because neither Skillern nor his attorney lodged an objection to the limitation. Though the parties' competing arguments raise a number of important and unsettled questions about the relationship between the various "error" doctrines, we needn't answer them today. As explained below, because the trial record doesn't indicate that either Skillern or his lawyer had any intention or desire to discuss his testimony during the recess, Skillern can't show that he was actually deprived of his right to counsel, as required by our en banc decision in *Crutchfield*.

**A**

First, a brief word about Skillern's assertion that a *Geders*-like violation of the sort alleged here is a "structural error." If it is, then it "def[ies] analysis by harmless error standards." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006). Structural errors are those (comparatively few) that "affect the framework within which the trial proceeds, rather than being simply an error in the trial process itself." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017) (internal quotation marks omitted). Most errors don't fall into the narrow structural-error category and are instead deemed "trial errors"; they don't require reversal if the government "can show beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* (internal quotation marks omitted).

So is Skillern right that a *Geders*-type Sixth Amendment violation is necessarily a structural error? Tough to say. When in *Geders* itself the Supreme

8

Court held that a district court had violated the Sixth Amendment by flatly precluding a defendant from consulting with his lawyer (about any topic) during an overnight recess, and reversed on that basis, it did so without invoking the structural-error doctrine—but also, conspicuously, without pausing to examine whether or not the error might have been harmless. 425 U.S. at 91. So too, when a few years later the former Fifth Circuit reversed a conviction on the ground that the district court had violated a defendant's Sixth Amendment rights by preventing him from consulting with his attorney (again, at all) during a brief recess, it did so without calling the error structural—but again, without bothering to assess harmlessness. *See United States v. Conway*, 632 F.2d 641, 645 (5th Cir. 1980).[2] In the same way, when we held more recently that a district court violated a defendant's Sixth Amendment right to counsel by preventing him from conferring with his attorney during two overnight recesses, we did so without mentioning structural error, but also without considering harmlessness. *See United States v. Cavallo*, 790 F.3d 1202, 1213–18 (11th Cir. 2015).

The plurality opinion in *Crutchfield* arguably inched closest to actually addressing the structural-error issue when it said that "any deprivation of assistance

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Circ. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. We also note that the part of *Conway* holding that it is a Sixth Amendment violation to restrict communications during a brief recess is no longer good law in light of the Supreme Court's later decision in *Perry v. Leeke*, 488 U.S. 272 (1989).

of counsel constitutes reversible error and necessitates a new trial" and then went on to state that "[o]ur rule does not include a harmless error analysis."  803 F.2d at 1108.  That, it seems to us, is pretty close to a recognition that a *Geders* violation, if proven, constitutes a structural error that is not susceptible to harmless-error analysis.  The *Crutchfield* plurality's opinion doesn't bind us, of course, but we do note that its resolution of the issue comports with the decisions of other circuits. *See, e.g.*, *United States v. Triumph Capital Grp., Inc.*, 487 F.3d 124, 131 (2d Cir. 2007) ("[I]n the *Geders* context, a violation of a defendant's Sixth Amendment right to counsel … constitutes a structural defect which defies harmless error analysis ….") (internal quotation marks omitted); *United States v. Santos*, 201 F.3d 953, 966 (7th Cir. 2000) (same); *United States v. McLaughlin*, 164 F.3d 1, 4 (D.C. Cir. 1998) (same).

But that doesn't conclude the inquiry, because even if a *Geders* violation is proven, and even if such a violation is a structural error, the question remains: What happens if a structural error occurs, but, as happened here, no one complains about it?  In the case of non-structural trial errors, the "plain error" rule severely restricts appellate review of unchallenged trial-court rulings.  *See, e.g.*, *United States v. Dudley*, 463 F.3d 1221, 1227 (11th Cir. 2006).  Under the plain-error standard, we have "discretion to correct an error" in a criminal trial, even absent a proper objection, "where (1) an error occurred, (2) the error was plain, (3) the error

10

affected substantial rights, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Duncan*, 400 F.3d 1297, 1301 (11th Cir. 2005).   Whether the structural-error doctrine modifies a defendant's burden to satisfy all four plain-error factors remains unsettled.  *See, e.g.*, *United States v. Marcus*, 560 U.S. 258, 263 (2010) ("[W]e have noted the possibility that certain errors, termed 'structural errors,' might 'affect substantial rights' regardless of their actual impact on an appellant's trial."); *see also United States v. Watson*, 611 F. App'x 647, 661 (11th Cir. 2015) ("Whether structural error modifies a defendant's burden to satisfy all four plain-error factors remains an open question.").  Even if we were to assume that the first two elements of the plain-error standard would be satisfied where a district court prevented a defendant from discussing his testimony with his attorney during an overnight recess, it's a much closer call whether the third and fourth factors would be met.

Finally, setting aside the plain-error doctrine, the government also argues here that we needn't even consider Skillern's argument because Skillern's lawyer "invited" any Sixth Amendment error that might have occurred.  As a rule, a party "may not challenge as error a ruling or other trial proceeding invited by that party." *United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005).  While this Court has held that we "may not invoke the plain error rule to reverse the district court's judgment" if an error is invited, *United States v. Carpenter*, 803 F.3d 1224, 1236

(11th Cir. 2015), the relationship between structural errors and the invited-error doctrine is murky. *Cf. United States v. Gaya*, 647 F.3d 634, 640 (7th Cir. 2011) (holding that "there is no reason to exempt 'structural errors'" from the invited-error doctrine).

*        *        *

So as you see, this case raises several issues that have yet to be—but will eventually need to be—definitively settled in this Circuit. But as we've said, we can leave them for another day, because as explained below, we conclude that under the rule embraced in *Crutchfield*, Skillern was not actually deprived of his Sixth Amendment right to counsel.

## B

In *Crutchfield*, a majority of the en banc Court held that in order to make out a *Geders*-type Sixth Amendment violation, a criminal defendant must demonstrate that he and his counsel actually intended to confer during the recess and would have done so if not prevented by the district court. As already explained, in that case, the district court directed a defendant's lawyers not to discuss his testimony with him during the course of a mid-trial break. On appeal, the six-judge plurality opinion concluded: "Because the trial record does not reflect—by objection, motion, or request—that [the defendant] and his counsel actually desired to confer during the recess, we find that [the defendant] was not deprived of the right to

12

assistance of counsel within the meaning of the sixth amendment." 803 F.2d at 1109. In his concurring opinion, Judge Edmondson agreed: "In this case, the trial record does not show that the defendant and defense counsel actually desired to confer during the pertinent recess and would have conferred but for a restriction placed upon them by the trial judge. Consequently, the trial record in this case shows no deprivation of defendant's right to counsel." *Id.* at 1118–19 (Edmondson, J., concurring).

Our en banc decision in *Crutchfield* therefore establishes the principle that a condition precedent to a *Geders*-like Sixth Amendment claim is a demonstration, from the trial record, that there was an actual "deprivation" of counsel—*i.e.*, a showing that the defendant and his lawyer desired to confer but were precluded from doing so by the district court. That actual-deprivation rule, the plurality explained, "satisfies our concerns for the important constitutional right of assistance of counsel, provides for the orderly conduct of trials, and makes sense." *Id.* It also, we note, squares with the decisions of two of our sister circuits. *See Stubbs v. Bordenkircher*, 689 F.2d 1205, 1207 (4th Cir. 1982) ("[I]n order to obtain relief a petitioner must show a 'deprivation' of his Sixth Amendment rights by demonstrating that he wanted to meet with his attorney but was prevented from doing so by the instruction of the trial judge."); *Bailey v. Redman*, 657 F.2d 21, 23–24 (3d Cir. 1981) (holding there was no Sixth Amendment violation where the

defendant "fail[ed] to demonstrate that he was actually 'deprived' of his right to consult with his attorney").

The trial record here reflects no such "actual deprivation." At the end of the first day of Skillern's testimony, after the jury was excused, the following exchange occurred:

> [Attorney]:  And, Your Honor, may I speak to Mr. Skillern about matters other than his testimony this evening –
>
> The Court:  Yes.
>
> [Attorney]:  – that may come up?
>
> The Court:  You can talk about the weather. What do you mean, other than may come up? [sic]  Not his testimony or his impending testimony.
>
> [Attorney]:  Right, Your Honor, but maybe witness problems or things like that?
>
> The Court:  Yes, anything about the proceeding and so forth, who's coming, who is not coming, that's fine, but just not his testimony or his impending testimony.
>
> [Attorney]:  Fine, Your Honor.

Trial Tr., Doc. No. 431-9, at 208–09.

The issue here isn't just that Skillern's lawyer failed to object to the district court's limitation. Instead, the problem is that the record is entirely devoid of *any* indication—in *any* form—that Skillern or his attorney planned or wanted to confer

14

about his testimony during the recess.[3]  To the contrary, Skillern got from the district court exactly what his lawyer asked for—namely, permission to speak "about matters other than his testimony."  We therefore leave aside issues about trial error, harmless error, structural error, plain error, and invited error, and instead hold, under *Crutchfield*, that Skillern hasn't shown that he was actually deprived of his Sixth Amendment right to counsel.[4]

## C

Skillern and Nelson have raised other issues on appeal.  First, both contend that they should have been acquitted on all counts because the jury was required to accept their argument that they relied in good faith on the advice of an attorney.  Second, they challenge the sufficiency of the evidence supporting the mail-fraud counts.  Finally, Nelson argues that there was no legally sufficient evidence that he

---

[3] To be clear, we do not hold that there must always be a formal objection where a district court prevents attorney-client communication during an overnight recess.  To the extent that unpublished decisions from this Court might be read to suggest a hard-and-fast requirement that a defendant formally object in order to preserve a *Geders*-type Sixth Amendment argument, or that the plain-error standard necessarily applies absent such an objection, *see, e.g.*, *United States v. Jubiel*, 377 F. App'x 925, 934–35 (11th Cir. 2010), we are not bound by them.

[4] In a supplemental brief, Skillern seems to suggest that the absence of any desire to confer is not dispositive.  Instead, he argues, we must consider the "totality of the facts," including that the district court instructed *other* witnesses not to discuss their testimony with anyone.  To the extent that Skillern means to say that the district court's instructions to other witnesses had some sort of "chilling effect" that caused his own lawyer to ask to speak only about "matters other than [Skillern's] testimony," we disagree.  The mere fact that other, non-party witnesses were instructed not to discuss their testimony with anyone has no particular bearing on Skillern's rights as a defendant.

had an intent to defraud.  All of these boil down to sufficiency-of-the-evidence challenges, and after careful review of the record, we reject them.

## III

For all of the reasons explained above, we affirm Skillern's and Nelson's convictions.

**AFFIRMED.**