[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-10672

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FREDDIE CLARK,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:18-cr-00046-CDL-MSH-1

_____

Before JORDAN, JILL PRYOR, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Freddie Clark was convicted of possessing a firearm as a convicted felon, possessing methamphetamine with intent to distribute, and possessing a firearm in furtherance of a drug trafficking crime. As a result, he was sentenced to 360 months' imprisonment, with five years of supervised release. On appeal, he raises five claims as to why he should either receive a new trial or, alternatively, be resentenced. None of his claims warrant reversal or remand, so we affirm.

## I.

It was between 2:00 AM and 3:00 AM in Columbus, Georgia, on March 14, 2018. Corporal William Ragland of the Columbus Police Department noticed that a car was swerving on the road and turned his patrol lights on to conduct a traffic stop. Instead of pulling over to the side of the road, Clark continued driving for about half a mile at a low rate of speed until he finally turned left into a gas station parking lot. Ragland then drew his firearm and commanded Clark to show his hands and exit the vehicle. Clark opened the front door of his car. Ragland ordered Clark to get out of the vehicle. At this point, Ragland saw a semi-automatic pistol on Clark's left side. The barrel of the gun was engraved with the marking "Prescott, AZ." Ragland pulled Clark out of the car and handcuffed him. At this point, several officers were on the scene, and one of these officers discovered a bag of what turned out to be

methamphetamine in Clark's front pocket. Upon searching Clark's car, officers found a digital scale, small bags, and another bag of what turned out to be methamphetamine. At the time of this arrest, there was an outstanding Alabama warrant for Clark's arrest. Law enforcement examined the firearm that Clark possessed as well as the drugs recovered from the scene. A lab scientist determined the quantity of methamphetamine contained in the two bags, which he later testified about at trial.

Based on this incident, a grand jury returned a three-count indictment against Clark in December 2018. The charges were as follows: Count 1 was for possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2); Count 2 was for possession with intent to distribute five grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B)(viii); and Count 3 was for possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A). The Government subsequently filed a superseding indictment based on the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), alleging that Clark knew he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year.

Before trial, Clark filed a motion to suppress the evidence obtained during the search of Clark's pant pockets and his vehicle upon his arrest. As to the reasonable suspicion or probable cause to stop Clark's car in the first place, Ragland testified that he saw Clark weaving between lanes. Although Ragland was unable to

remember at the suppression hearing exactly how Clark was weaving, he nonetheless consistently said that weaving prompted him to stop Clark.  Ragland testified that he drew his weapon at the gas station because Clark had failed to stop immediately and because he thought such failure to stop was suspicious.  When Clark failed to obey Ragland, both by failing to stop the car immediately and by failing to exit the car upon Ragland's orders (while he also held a gun at his side that Ragland could see), Ragland pulled Clark out of the car.  Ragland testified that at this point, Clark was subject to arrest for failing to maintain his lane, reckless conduct, obstruction, and fleeing to elude.  The District Court denied the motion to suppress.

Clark proceeded to a jury trial on all three counts, and he did not stipulate that he knew he was a felon for the purposes of trial.  Clark's trial was bifurcated.  The first phase of the trial pertained to Counts 2 and 3 of the indictment for possession with intent to distribute more than five grams of methamphetamine and possession of a firearm in the furtherance of a drug crime, while the second phase of the trial pertained to Count 1 of the indictment for being a felon in possession of a firearm.  During the first phase of the trial, the Government introduced testimony from law enforcement officers and the lab scientist, who served as a forensic drug expert.  The Government entered into evidence the two bags found at the scene, which in total contained a little over 85 grams of a substance.  The Government's lab scientist testified that both bags contained methamphetamine, and that, accounting for the purity of the

substances, the combined total substance was 44 grams of pure methamphetamine.

The District Court spoke with both the Government and Clark's counsel about both of their proposed jury instructions, ultimately getting approval of the final jury instructions by both parties. As to Count 2, the Court charged the jury that it must find beyond a reasonable doubt that Clark was guilty of knowingly possessing methamphetamine and intending to distribute the methamphetamine. The Court further charged that if the jury found the defendant guilty of possessing methamphetamine with the intent to distribute it, it had to "unanimously agree on whether the weight of the methamphetamine the defendant possessed [wa]s [five] grams or more." That part of the jury instruction pertaining to the amount of methamphetamine did not contain the "beyond a reasonable doubt" language. A finding that Clark had possessed more than five grams of methamphetamine would raise the mandatory minimum sentence to five years and the statutory maximum to forty years. 21 U.S.C. § 841(b)(1)(B)(viii). Clark's counsel did not object to the jury instructions as given. The jury found that Clark had possessed methamphetamine with intent to distribute it and had possessed more than five grams of methamphetamine.

As to phase two of the trial, on the felon-in-possession count, the Government called Special Agent Paul Culp and a probation officer to testify. Culp was an expert witness, testifying about the interstate nexus and gun identification. He explained that the gun had been manufactured in Arizona and that it was a firearm. Then,

a probation officer testified about an Order of Probation pertaining to Clark from 2017 for the felony of unlawful distribution of a controlled substance, which explained that Clark was not to "possess, receive, or transport firearms." The Order of Probation was admitted into evidence, and it included 42 offenses resulting in arrests, beginning in 1991, when Clark was only 15 years old. The Government also introduced certified copies of seven additional felony convictions, beyond the one for which the Probation Order was issued. Clark's counsel objected to admission of more than one felony conviction under Fed. R. of Evid. 403. The District Court overruled the objection and allowed all this evidence to come in to show Clark's knowledge that he was a felon under *Rehaif*.

The jury returned a guilty verdict, and Clark did not move for a judgment of acquittal on any ground as to phase two of the trial. Sentencing was then scheduled for February 4, 2020. But, nearly two months after trial and before sentencing, the Government disclosed *Brady* material that it had been unaware of at the time of trial. Culp had failed to disclose in his *Giglio* interview that he had been disciplined in 2016 by the Bureau of Alcohol, Tobacco, Firearms and Explosives for mishandling evidence in a case involving an individual who was charged with distributing narcotics and being a felon in possession of a firearm. That case was dismissed prior to trial because of Culp's destruction of the evidence. As a result of his misconduct, one of the United States Attorney's Offices refused to accept future cases from him. In Clark's case, the

Government specifically asked Culp if he had been disciplined in the past as part of his *Giglio* interview.  He said no.

This *Brady* material prompted Clark to file a motion for a new trial under Fed. R. of Crim. P. 33(a).  The District Court concluded that revelation of Culp's misconduct would not have changed the outcome of the trial and denied Clark's motion.

The Presentence Report calculated Clark's guideline range of 360 months to life based on a total offense level of 34 and a category VI criminal history category.  There was no mandatory minimum as to Count 1, but there was a statutory maximum of ten years. 18 U.S.C. § 924(a)(2). Because the jury found that Clark possessed more than five grams of methamphetamine, the mandatory minimum penalty for Count 2 was five years, and the maximum penalty was 40 years of imprisonment. 21 U.S.C. § 841(b)(1)(B)(viii). The mandatory minimum for Count 3 was five years of imprisonment, consecutive to any other term of imprisonment.  Clark objected to the Presentence Report's calculations, but his objections did not impact the guidelines range.  The District Court looked at the guidelines range and applied the 18 U.S.C. § 3553(a) factors to impose a 360-month sentence, 120 months for each count running consecutively, with a three-year period of supervised release as to Count 1 and a five-year period of supervised release as to Counts 2 and 3.  Clark timely appealed.

## II.

Clark appealed on five grounds. First, he argues that the District Court abused its discretion in failing to grant his motion for a new trial based on the Government's disclosure of the *Brady* material after trial. Second, he argues that the District Court erred in denying his motion to suppress the evidence seized as a result of the traffic stop and subsequent arrest. Third, Clark contends that the District Court plainly erred in violation of the Sixth Amendment when it failed to specifically instruct the jury to apply the beyond-a-reasonable-doubt standard to the question of the weight of the methamphetamine. Fourth, Clark claims that the District Court abused its discretion in admitting evidence of all eight of Clark's prior felony convictions. And, finally, Clark argues that the cumulative effect of errors in the District Court warrants reversal and remand for a new trial. We will address each in turn.

## III.

Clark's first contention is that the District Court abused its discretion in denying his motion for a new trial based on the Government's post-trial disclosure of *Brady* material about Culp's internal discipline for prematurely destroying evidence. *See United States v. Vallejo*, 297 F.3d 1154, 1163 (11th Cir. 2002) (applying abuse-of-discretion standard to motion for new trial based on *Brady* material). Specifically, Clark explains that he would have impeached Culp on the interstate nexus of the firearm and that "[h]e would have forgone a bifurcated trial in order to lodge a more aggressive attack on the credibility of all of the law enforcement

officers involved in the case," had he known about Culp's misconduct prior to trial.  To make out a *Brady* claim on impeaching evidence that was inadvertently suppressed by the Government as occurred in this case, a defendant "must show that, had the evidence been revealed to the defense, there is a reasonable probability that the outcome of the proceeding would have been different." *United States v. Fernandez*, 136 F.3d 1434, 1438 (11th Cir. 1998) (citing *United States v. Newton*, 44 F.3d 913, 918 (11th Cir. 1994)). Our inquiry is whether the defendant received a fair trial with a "verdict worthy of confidence," even without the disclosure of the *Brady* material. *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S. Ct. 1555, 1566 (1995). We conclude that, in this case, Clark did receive such a verdict.

Culp's role was to act as an expert witness to establish the interstate nexus for the firearm in phase two of the trial—the portion of the trial dedicated to Count 1 for 18 U.S.C. § 922(g) and 18 U.S.C. § 924(a)(2), for being a convicted felon in possession of a firearm. When Clark was arrested, Ragland saw a Ruger semi-automatic pistol on Clark's left side.  That pistol contained a marking of "Prescott, AZ" on the barrel.  Clark never disputed at trial that the gun was manufactured in Arizona, nor does he now contest that the firearm admitted into evidence contains the marking "Prescott, AZ." *See United States v. Brantley*, 68 F.3d 1283, 1288 (11th Cir. 1995) (noting that "the weapon, which was seized in southern Florida, bore an imprint indicating that it had been manufactured in Atlanta, a clear indication of interstate commerce");

see also *United States v. Alvarez*, 972 F.2d 1000, 1004 (9th Cir. 1992) (explaining that the inscription of "Garnika, Spain" on firearm could be used to show its manufacture in Spain).

While Special Agent Culp's misconduct in handling evidence in a previous case was egregious enough for him to be barred from bringing cases in at least one United States Attorney's Office, it is not clear that the failure to disclose his prior mishandling of evidence would serve to render this trial unfair. Even if there would have been impeachment value for his prior discipline, there is not a reasonable probability that it would have affected the jury's conclusion that the firearm was manufactured in Arizona, where the marking on the barrel clearly displayed "Prescott, AZ." *See United States v. Stahlman*, 934 F.3d 1199, 1229 (11th Cir. 2019) (explaining that an agent's prior discipline would not have changed the overall outcome of the trial where the evidence was undisputed and overwhelming).

As to Clark's second argument that he would have forgone a bifurcated trial and attacked the credibility of all the Government's witnesses had he known about Culp's past misconduct, we are unpersuaded. Culp had nothing to do with the evidence in this case. So, his lack of credibility would tell the jury nothing about the credibility of the other officers, who did handle evidence in this case. And, unlike the other officers in this case, who were witnesses and active participants at the scene of the arrest, Culp was easily replaceable—that is, another officer could have and likely would have been swapped in, had the Government discovered his

dishonest answer in the *Giglio* interview. *See United States v. Matthews*, 168 F.3d 1234, 1243 (11th Cir. 1999). And the amount of body cam footage as well as physical evidence available to the jury significantly undercuts any argument that there would be a "reasonable probability" that the outcome of the trial would be different. *Fernandez*, 168 F.3d at 1438. So, the District Court did not abuse its discretion in denying Clark's motion for a new trial based on the *Brady* material.

## IV.

Clark's second claim is that the District Court erred in denying Clark's motion to suppress the evidence seized as a result of the traffic stop and subsequent arrest. *See United States v. Plasencia*, 886 F.3d 1336, 1342 (11th Cir. 2018) (explaining that in the context of a motion to suppress we review a district court's factual findings for clear error and its application of law *de novo*). The main thrust of Clark's argument is that there was no reasonable suspicion or probable cause for Ragland to make a traffic stop in the first place and then no probable cause to search Clark and the car.

As to the probable cause to stop the car in the first place,[1] Ragland said in his body cam footage that night and during his

---

[1] Because Ragland had probable cause to stop the car, as explained below, we do not need to engage in whether there was reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968), which is a lower standard than probable cause. *See Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990) (explaining that "the level of suspicion required for a *Terry* stop is

testimony that he turned on his patrol lights to stop Clark because he noticed a car weaving in and out of lanes, which is a violation of Georgia law. *See* Ga. Code Ann. § 40-6-48(1). Clark points to some of Ragland's statements at the suppression hearing, in which he could not remember certain details about Clark's driving on the night in question. For instance, Ragland consistently says that Clark was weaving on the road, but he cannot remember whether Clark crossed a fog line (there was none on this road) or whether Clark's driving behavior changed once he turned on his blue patrol lights. And the dash cam footage does not clearly show Clark's car at the time. So, Clark says, this shows that Ragland had no probable cause to stop him. Finding Ragland's testimony "unequivocal[]" and un-impeached, the District Court credited Ragland's testimony that Clark was indeed weaving between lanes and determined that on those facts Ragland was justified in making a traffic stop in the first place.

The problem with Clark's argument is that he seeks to impermissibly heighten the probable cause standard to require officers to have perfect memory as to why they stopped an individual. We decline his implied invitation to raise the standard for probable cause.

"A traffic stop is a seizure within the meaning of the Fourth Amendment." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th

---

obviously less demanding than for probable cause" (internal quotation marks omitted)).

Cir. 2001). And an officer may stop a car "when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic violations and equipment regulations relating to the operation of motor vehicles." *United States v. Hawkins*, 934 F.3d 1251, 1259 (11th Cir. 2019) (internal citation and quotation marks omitted). Probable cause is more than mere suspicion but does not require the same "standard of conclusiveness and probability as the facts necessary to support a conviction." *United States v. Dunn*, 345 F.3d 1285, 1290 (11th Cir. 2003) (internal citation and quotation marks omitted). And we evaluate whether probable cause existed at the time of a traffic stop by viewing the stop "from the standpoint of an objectively reasonable police officer." *United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003) (citing *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 1661–62 (1996)).

Turning to Clark's case, we do not think the District Court clearly erred in the factfinding here based on Ragland's credible testimony that Clark was weaving between lanes. And the fact of Clark weaving in violation of Georgia law, as found by the District Court, created probable cause that Clark had committed a Georgia traffic infraction. So, with that, we hold that there was probable cause to stop the car in the first place.

Next, we turn to Clark's contention that Ragland lacked probable cause to arrest Clark and conduct a search incident to arrest. The gas station where Clark ultimately pulled over was about half a mile from the spot where Ragland first activated his patrol

lights. Once at the gas station, Clark did not immediately comply with Ragland's command to get out of the car. Clark has a benign explanation for these two instances of seemingly failing to comply with an officer's orders—an explanation the District Court did not buy. First, Clark says that it was early in the morning, between 2:00 AM and 3:00 AM, and he was driving to a well-lit, more populated spot before stopping his car. He also says that he had a plate of food in his lap when Ragland ordered him to get out of the car. And, because the initial stop would have only been for a traffic violation, Clark's theory is that there was no probable cause for arrest here and that he was due only a citation.

Clark's attempt at an innocent explanation for his behavior is unavailing. To determine whether his arrest comported with the Fourth Amendment, the question is not whether there is an innocent explanation for Clark's behavior, but rather whether there was probable cause—that is, whether based on the "facts and circumstances within the officer's knowledge, . . . a prudent person [would] believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Wilkerson v. Seymour*, 736 F.3d 974, 978 (11th Cir. 2013) (internal citation and quotation marks omitted). Under Georgia law, failure to maintain a lane is an arrestable offense. *See Lopez v. State*, 286 Ga. App. 873, 875 (Ga. Ct. App. 2007). So, on that ground alone,

20-10672                Opinion of the Court                15

Ragland had authority to arrest Clark.[2] *See Draper v. Reynolds*, 369 F.3d 1270, 1276 (11th Cir. 2004) (explaining that an officer was justified in arresting suspect for Georgia traffic violation); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 351–55, 121 S. Ct. 1536, 1556–58 (2001) (explaining that both misdemeanor offenses and traffic violations may serve as predicates for custodial arrests).[3] In

---

[2] The parties dispute other statutory grounds for the probable cause to arrest, including reckless conduct, obstruction, and fleeing and eluding an officer. Because the traffic violation was sufficient to create probable cause to arrest, we need not address the other grounds mentioned in the briefs.

[3] Clark dedicates one sentence of his Opening Brief to the search of his pockets and vehicle: "Because Ragland's belief was objectively unreasonable, Clark's arrest was not supported by probable cause and the subsequent search of his pockets and vehicle was unlawful and the fruits are due to be suppressed." When Clark was arrested, his front pocket contained a bag of methamphetamine, and a strong smell of marijuana emanated from his car, which led to a search of the car and a finding of more drugs and drug paraphernalia. Because Clark did not make any serious arguments as to whether there was probable cause to search Clark's pockets or vehicle, we deem those arguments abandoned. *See Allstate Ins. v. Swann*, 27 F.3d 1539, 1542 (11th Cir. 1994) ("Issues that clearly are not designated in the initial brief ordinarily are considered abandoned."). Even so, the search incident to arrest and the car sweep were constitutional here because officers may search an individual upon arrest and may search a car when there is probable cause that it contains contraband. *See United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007); *Arizona v. Gant*, 556 U.S. 332, 339, 129 S. Ct. 1710, 1716 (2009) (explaining that officers may conduct a search incident to arrest on the "arrestee's person and the area within his immediate control" to prevent the destruction of evidence and to avoid potential harm to the arresting officer (internal citation and quotation marks omitted)).

short, because the District Court did not clearly err in finding that Clark was weaving in violation of Georgia traffic laws, we hold that there was probable cause to stop and arrest Clark.

## V.

Next, Clark argues that the District Court failed to specifically instruct the jury to apply the beyond-a-reasonable-doubt standard to the special verdict question of weight. Clark did not raise this objection below, so we review it for plain error. *United States v. Felts*, 579 F.3d 1341, 1343 (11th Cir. 2009).

Count 2 charged Clark with possessing methamphetamine with intent to distribute it. The District Court instructed the jury as follows:

> The defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt: one, that the defendant knowingly possessed methamphetamine; and, two, that the defendant intended to distribute methamphetamine . . . . The defendant is charged with possessing and intending to distribute at least 5 grams of methamphetamine. But you may find the defendant guilty of the crime of possession of methamphetamine with intent to distribute it even if the amount of the controlled substance for which he should be held responsible is less than 5 grams. So if you find the defendant guilty of possession of methamphetamine with intent to distribute it, you must also unanimously agree on whether the weight of methamphetamine the

defendant possessed is 5 grams or more and specify
that amount on the verdict form.

If the jury found that the weight was above five grams, that
finding would raise the mandatory minimum for the possession
with intent to distribute to five years and the statutory maximum
to forty years. 21 U.S.C. § 841(b)(1)(B)(viii). Under *Alleyne v.
United States*, 570 U.S. 99, 133 S. Ct. 2151 (2013), because the find-
ing as to weight triggers a minimum penalty range, the weight
must be proven beyond a reasonable doubt.

In this case, the District Court did not properly charge the
jury that the weight had to be proven beyond a reasonable doubt.
By separating weight out from the other two elements of the of-
fense, the District Court distanced weight from the beyond-a-rea-
sonable-doubt language in such a way that the jury may have as-
sumed that weight did not need to be proven beyond a reasonable
doubt. But, even if we agree with Clark that there was error in the
jury instruction, we are powerless to continue in the plain error
analysis because Clark invited the error below. *See United States v.
Jernigan*, 341 F.3d 1273, 1289 (11th Cir. 2003) (explaining that "even
plain error review is unavailable in cases where a criminal defend-
ant invites the constitutional error of which he complains" (internal
quotation marks omitted)).

When initially asked whether he had any objections to the
proposed charge document, Clark's counsel responded that he did
and put forth one objection to Charge 11, unrelated to this appeal,
that the District Court sustained.  When asked whether Clark's

counsel had any other objections, counsel responded, "Other than Charge 11, Your Honor, I didn't have any objection."  The District Court specifically explained its planned jury instructions as follows: "What I'm thinking is changing [the instructions] to read, 'You must unanimously agree on whether the weight of the methamphetamine the defendant possessed is 5 grams or more and specify that finding on the verdict form.' I mean, that's more accurate [than requiring the jury to come up with a particular weight]." Then, the District Court asked Clark's counsel, "Do you see any problem with that, Mr. Simpkins?" To which, Clark's counsel, Mr. Simpkins, responded, "I do not, Your Honor." DE 89, p. 22.

Unfortunately for Clark, his counsel's responses serve as textbook examples of invited error, and thus we cannot continue in the plain error analysis. *See United States v. Silvestri*, 409 F.3d 1311, 1337 (11th Cir. 2005) (explaining that when a party affirmatively accepts a jury instruction, any resulting error is invited). We cannot reverse the jury's verdict on this ground.[4]

---

[4] Clark separately makes an argument that the failure to include the beyond-a-reasonable-doubt language in the jury instruction as to weight is a structural error, requiring automatic reversal.  However, we are bound by our precedent, which says that *Alleyne* errors are only subject to plain error review when not preserved. *United States v. King*, 751 F.3d 1268, 1279 (11th Cir. 2014) (per curiam). Our Circuit has not decided the interplay between invited error and structural error, but we need not flesh it out today. *Compare United States v. Nelson*, 884 F.3d 1103, 1108 (11th Cir. 2018) (explaining that "the relationship between structural errors and the invited-error doctrine is murky") *with United States v. Gaya*, 647 F.3d 634, 640 (7th Cir. 2011) (explaining that "there

## VI.

Clark's fourth argument is that the District Court abused its discretion when it admitted evidence of all eight of Clark's prior felony convictions, including a probation order that surveyed his lengthy arrest record, in phase two of his trial—the part of the trial dedicated to the felon-in-possession count under 18 U.S.C. § 922(g) and 18 U.S.C. § 924(a). *See United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006) (explaining that we review the admission of evidence for abuse of discretion). He also argues that the records should have at least been redacted and that a limiting instruction should have been given, which we review for plain error because this argument was not raised below. *See United States v. Harris*, 886 F.3d 1120, 1127 (11th Cir. 2018); *United States v. Billue*, 994 F.2d 1562, 1567 (11th Cir. 1993).

Our starting point—on which both Clark and the Government must and do agree—is that under the reasoning of *Rehaif* the Government now must prove that an individual knew he was a felon when he possessed a firearm in order to carry its burden of proof under 18 U.S.C. § 922(g). *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019) ("We conclude that in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew

_____

is no reason to exempt structural errors" from the invited-error doctrine (internal quotation marks omitted)).

he belonged to the relevant category of persons barred from possessing a firearm.").

Clark decided not to stipulate to his status as a convicted felon. So, the Government had to prove at trial that Clark *knew* he was a felon at the time he was possessing a firearm. To do so, the Government admitted into evidence records indicating eight prior felony convictions, which included multiple drug counts and a probation order listing 42 prior offenses resulting in arrests, going all the way back to when Clark was only 15 years old in 1991. Clark now argues on appeal that the District Court abused its discretion because, he says, allowing all this evidence is a violation of Fed. R. Evid. 403. Rule 403 explains that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . or needlessly presenting cumulative evidence." Clark suggests that evidence of one prior felony conviction should have been allowed and only evidence of one prior felony conviction. We disagree. Sometimes, as Clark did in this case, a defendant will challenge a prior felony conviction. So, we cannot establish a rule that says, "Government, one and only one." Furthermore, Clark did not stipulate to his felon status. Cf. *Old Chief v. United States*, 519 U.S. 172, 191–92, 117 S. Ct. 644, 655–56 (1997) (holding that the district court had abused its discretion in admitting the record of conviction when the defendant in that case offered to stipulate to a prior felony conviction). So far as we can tell, no other circuit has addressed how many prior felony convictions are acceptable for the Government to admit after *Rehaif*. The

answer likely depends on the circumstances of each case. As a general matter, though, we think it imprudent to hamstring the Government in the case where a defendant refuses to stipulate to felony status. *See, e.g., United States v. Timpani*, 665 F.2d 1, 6 (1st Cir. 1981) (Breyer, J.).

We do note that the arrest records included in the Probation Order were entirely irrelevant to the knowledge of being a felon, but Clark did not object at trial to the introduction of the arrest records as part of the Probation Order. Nor was it particularly relevant what the basis of the prior felony convictions was. But, again, Clark did not request redaction or ask for a limiting instruction below.

Because he did not specifically object to the admission of arrest records as part of the Probation Order at trial, request redaction of any of the records, or seek a limiting instruction below, we review all of Clark's claims on these grounds for plain error. *See* Fed. R. Crim. P. 52(b). The problem for Clark is that he is unable to show, even if there were error by the District Court,[5] that such

---

[5] There is no doubt that the arrest records included in the Probation Order have zero bearing on Clark's knowledge of his status as a felon. But we cannot say that the District Court's failure to *sua sponte* exclude the evidence, which was included in a relevant Probation Order for a relevant felony conviction, constituted plain error. *See United States v. Williams*, 527 F.3d 1235, 1247 (11th Cir. 2008) ("For the admission of evidence to constitute plain error, the evidence must have been 'so obviously inadmissible and prejudicial that, despite defense counsel's failure to object, the district court, *sua sponte*, should have excluded the evidence.' *United States v. Smith*, 459 F.3d 1276, 1300 (11th

error was plain or that it affected his substantial rights. *See United States v. Olano*, 507 U.S. 725, 732, 133 S. Ct. 1770, 1777 (1993) (explaining that under plain error review the appellant must prove that an error occurred that was both plain and that affected his substantial rights). We look at the record as a whole to determine if an error affected a defendant's substantial rights. *United States v. Reed*, 941 F.3d 1018, 1021 (11th Cir. 2019). And, here, the evidence of Clark's knowledge of his status as a felon was overwhelming, with his eight prior felony convictions, one of which was a conviction for being a felon in possession of a firearm.  So, Clark cannot "show a reasonable probability that" his trial outcome would have been different, if all these supposed errors had not been made—a showing required to establish that his substantial rights have been affected. *See Molina-Martinez v. United States*, 578 U.S. 189, 194, 136 S. Ct. 1338, 1343 (2016) (internal citation omitted).

## VII.

Finally, Clark argues that even if no one error warranted reversal, the cumulative effect of the errors in his trial should lead us to reverse and remand. *See United States v. Capers*, 708 F.3d 1286, 1299 (11th Cir. 2013). Because the only errors we can identify in this case are an invited error with respect to the jury instruction

---

Cir. 2006) (Tjoflat, J., specially concurring, *cert. denied*, 549 U.S. 1137, 127 S. Ct. 990, 166 L.Ed.2d 747 (2007)."). We do not pass on whether the District Court's failure to redact or give a limiting instruction unprompted was error because, even if both omissions were error, they did not affect Clark's substantial rights.

20-10672                Opinion of the Court                23

and potential (harmless) error with respect to the handling of the records of conviction, we cannot say that Clark experienced the type of cumulative error required to reverse a jury trial verdict. For the above reasons, we affirm.

**AFFIRMED.**