**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 25-12357

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JOSHUA WILLIAMS,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:18-cr-00064-SDM-TGW-1

————————————

Before WILLIAM PRYOR, Chief Judge, and LUCK and LAGOA, Circuit Judges.

PER CURIAM:

Joshua Williams appeals the revocation of his supervised release based on an altercation he had with his father, Jerry Williams.

He contends that the district court erred by admitting hearsay evidence without conducting the balancing test under *United States v. Frazier*, 26 F.3d 110 (11th Cir. 1994). He also contends that the evidence was insufficient to support a finding that he violated the terms of his supervised release. We affirm.

## I. BACKGROUND

In 2019, Williams was convicted of being a felon in possession of a firearm and ammunition. 18 U.S.C. § 922(g)(1). The district court sentenced him to a mandatory minimum of 180 months of imprisonment under the Armed Career Criminal Act, *id.* § 924(e), followed by five years of supervised release. Williams appealed, we granted summary reversal, vacated his sentence, and the district court resentenced him to time served, followed by three years of supervised release. The terms of Williams's supervised release prohibited him from committing more crimes, using controlled substances, and possessing dangerous weapons.

In March 2025, Williams's probation officer petitioned to revoke his release based on four alleged violations: aggravated assault and battery under Florida law, possession of a deadly weapon, and drug use. The allegations stemmed from a domestic altercation during which Williams allegedly elbowed Jerry in the head and pulled a knife on him. At the final revocation hearing, Williams admitted that he used drugs but contested the remaining allegations.

The government moved to admit several exhibits at the final revocation hearing, including body camera footage from officers who responded on the evening of the incident; two voicemails

from Jerry to the probation officer; a photo of a knife allegedly used in the altercation; and a text message from Williams to his probation officer. Williams's counsel stated that he had "[n]o objection" to the admission of this evidence. The government then called Williams's probation officer, who testified that she had received two voicemails from Jerry Williams. In the first, Jerry stated that he wanted Williams out of the house because he was drinking and had broken a plate, and in the second, he stated that Williams had pulled a knife on him. Over Williams's hearsay objection, his probation officer testified that she returned Jerry's call and that he confirmed the contents of his voicemails.

The government also called Officer Kaye, who testified that, upon his arrival at the residence, he encountered an intoxicated Williams walking from the backyard with a beer bottle in his hand. Over Williams's hearsay objection, Kaye testified that Jerry said that he and Williams had an argument in the kitchen, which escalated in the driveway when Williams elbowed him in the head and pulled a knife on him. Kaye testified that Williams "did seem like he wanted to be arrested," and when asked if he had pulled a knife, told the deputy, "I'll tell you yeah if you want to take me to jail." Deputies later recovered a knife in the backyard where Williams had been walking. Kaye transcribed a statement by Jerry recounting the altercation, which Jerry signed under oath. In this affidavit, which was admitted without objection, Jerry stated that Williams pulled a knife on him and told him to "come on," at which point Jerry got in his truck and left.

The district court found by a preponderance of the evidence that Williams had violated three of the terms of his supervised release by committing aggravated assault, possessing a deadly weapon, and using drugs. For the weapons violation, it found that he possessed the knife and "pitched" it to avoid having it in his possession when the officers arrived. The district court revoked his supervised release and sentenced him to 24 months of imprisonment, with no subsequent supervised release.

## II. STANDARD OF REVIEW

For preserved evidentiary challenges, we review the rulings for an abuse of discretion. *United States v. Hoffman-Vaile*, 568 F.3d 1335, 1340 (11th Cir. 2009). Under this standard, we assess whether any error was harmless. *Id.* But when a party states that he has "no objection" to the admission of evidence, the doctrine of invited error bars our review. *See United States v. Clark*, 32 F.4th 1080, 1090 (11th Cir. 2022) ("[E]ven plain error review is unavailable in cases where a criminal defendant invites the constitutional error of which he complains." (citation and internal quotation marks omitted)). We also review a revocation of supervised release for abuse of discretion. *Frazier*, 26 F.3d at 112. A district court may revoke a defendant's supervised release if it finds by a preponderance of the evidence that he violated a condition of that release. 18 U.S.C. § 3583(e)(3).

## III. DISCUSSION

Williams challenges the admission of Jerry's hearsay statements, which were presented in two forms: audiovisual recordings,

consisting of voicemails and body camera footage, and testimonial hearsay provided by Williams's probation officer and Officer Kaye. He contends that the district court should have conducted a *Frazier* balancing test before admitting this evidence. He also contends that the record contains insufficient evidence that he committed aggravated assault or possessed a deadly weapon. But we conclude that no reversible error occurred.

The doctrine of invited error bars our review of the admission of Jerry's statements through the audiovisual evidence. *See Clark*, 32 F.4th at 1090. That doctrine applies when an error is "attributable to the action of the defense." *United States v. Duldulao*, 87 F.4th 1239, 1255 (11th Cir. 2023) (citation and internal quotation marks omitted). Williams's counsel stated that he had "[n]o objection" to the admission of this evidence, a clear waiver. Williams cannot now complain that the district court erred by failing to conduct a *Frazier* balancing test before admitting the evidence he affirmatively accepted.

Any alleged error in the admission of Jerry's statements through the testimony of Williams's probation officer and Officer Kaye was harmless. Failure to conduct a *Frazier* inquiry does not require reversal if other properly admitted evidence also proves that the defendant breached the terms of his supervised release. *Frazier*, 26 F.3d at 114. Importantly, Jerry's affidavit and the voicemails from him to Williams's probation officer were admitted without objection. Although Williams contends that body camera footage, which included a phone call between Officer Kaye and

Williams's girlfriend, established that Jerry was motivated to remove Williams from the home, and that there was a "distinct implication" that Jerry had recanted his statement, the record contains nothing from Jerry establishing that he ever recanted. The district court was entitled to weigh Jerry's affidavit more heavily than the girlfriend's unsworn statements in the body camera footage. The properly admitted, non-testimonial evidence proved that Williams committed aggravated assault and possessed a deadly weapon.

Sufficient evidence also establishes that Williams committed aggravated assault. Under Florida law, aggravated assault requires an intentional threat with a deadly weapon that creates a "well-founded fear" of imminent violence. Fla. Stat. § 784.011. Williams contends that because Jerry did not testify, this "fear" element was not proved. But a victim's fear may be inferred if the circumstances "would ordinarily induce fear in the mind of a reasonable person." *Richards v. State*, 399 So. 3d 1117, 1118 (Fla. Dist. Ct. App. 2024) (citation and internal quotation marks omitted). The record establishes that Williams pulled a knife on his father and told him to "come on." It was not error for the district court to find that this act, during an alcohol-fueled dispute, would ordinarily induce a well-founded fear in the mind of a reasonable person.

Sufficient evidence also establishes that Williams possessed a deadly weapon. The recovery of the knife in the yard where Williams was walking, coupled with his admission when asked whether he pulled a knife on his father—"I'll tell you yeah if you

want to take me to jail"—supports the reasonable inference that Williams possessed and then "pitched" the weapon.

### IV. CONCLUSION

We **AFFIRM** the revocation of Williams's supervised release.