[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10710
Non-Argument Calendar
_____

D.C. Docket No. 5:14-cr-00055-MTT-CHW-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WAYNE WALKER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(September 3, 2015)

Before ED CARNES, Chief Judge, MARCUS, and WILLIAM PRYOR, Circuit
Judges.

PER CURIAM:

Wayne Walker entered a conditional guilty plea to one count of manufacturing counterfeit United States currency in violation of 18 U.S.C. § 471. He appeals the district court's denial of his motion to suppress. He contends that the officers who found counterfeit bills in his home did not comply with the "knock and talk" exception to the Fourth Amendment's warrant requirement and acted unreasonably by going to his house at 5:04 a.m.

I.

Officer Jason Douglas and Sergeant Travis Douglas were working the night shift on February 28, 2014. Because Officer Douglas had received information that Michael Upshaw, who had an outstanding warrant, could be found at Walker's house, the two officers visited it that night and again in the early hours of March 1.

Walker's house is located at the corner of Georgia Highway 49 and 111 Moore Place in Macon, Georgia. The back of the house faces Highway 49 while the side of the house faces Moore Place (another road). The house sits about 100 feet from Moore Place. A gravel driveway runs from Moore Place and goes directly under a metal carport that sits about 30 feet from the main door to the house (there is also a second door to the house). The carport is entirely open on all sides but covered by a metal roof. It is supported by five poles on each of two sides.

2

The officers first went to Walker's house at 9:00 p.m. on February 28. They knocked at the main door and the other door but no one answered. They left and returned at 11:00 p.m. Again they knocked and again no one answered. The officers noticed that parked in the open-sided carport was a Honda Civic that had not been there when they were at the house earlier.

The officers drove past the house again a little after 5:00 a.m. the following morning. They noticed that some house lights were on and the dome light inside the Honda Civic was now on. As they approached the car they saw a person inside with his head resting on the steering wheel. The officers testified that they were trying to figure out who was in the car and whether the person was alright. Sergeant Douglas therefore knocked on the car window, asked the person whether he was alright, and then asked him to step out of the car. The person in the car turned out to be Walker. The officers told Walker that they were looking for Upshaw. Walker said that Upshaw was not at the house and, without being asked, told the officers that they "were more than welcome" to come in and look for him. Upon entering the house, Officer Douglas began searching for Upshaw. He saw counterfeit $100 bills printed on white sheets of paper sitting on a shelf in plain view. The officers did not find Upshaw, but they did decide that they had probable cause to arrest Walker for the counterfeit currency.

## II.

3

Walker contends that the district court should have suppressed the evidence of counterfeit money that the officers found in his home because their search was illegal. "A motion to suppress evidence presents a mixed question of law and fact." United States v. Lewis, 674 F.3d 1298, 1302 (11th Cir. 2012). We review the district court's factfindings for clear error and its "application of the law to the facts de novo." Id. at 1302–03. We construe all facts in the light most favorable to the party who prevailed in the district court and give "substantial deference to the factfinder's credibility determinations, both explicit and implicit." Id. at 1303.

The "ultimate touchstone of the Fourth Amendment is reasonableness." Brigham City v. Stuart, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947 (2006). Because the home and the curtilage surrounding it is a "constitutionally protected area," Florida v. Jardines, ___ U.S. ___, 133 S. Ct. 1409, 1415–16 (2013), it is "presumptively unreasonable" to search a home or its curtilage without a warrant, Brigham City, 547 U.S. at 403, 126 S. Ct. at 1947 (quotation marks omitted). Under the "knock and talk" exception, however, a "police officer not armed with a warrant may approach a home and knock, precisely because that is no more than any private citizen may do." Jardines, 133 S Ct. at 1416 (quotation marks omitted). That exception is based on the "implicit license" that all individuals (including police officers) have to "approach [a] home by the front path, knock

4

promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." Id. at 1415.

The scope of the knock and talk exception is limited in two respects. First, it ceases where an officer's behavior "objectively reveals a purpose to conduct a search." Id. at 1416–17 (holding that using a police dog to sniff for drugs on the front porch "in hopes of discovering incriminating evidence" exceeds the scope of the knock and talk exception). Second, the exception is geographically limited to the front door or a "minor departure" from it. United States v. Taylor, 458 F.3d 1201, 1204–05 (11th Cir. 2006).

Walker contends that the officers exceeded the scope of the knock and talk exception because they conducted an investigatory search when they approached his vehicle. They did not, for two reasons. First, the officers' behavior did not objectively reveal a purpose to search. As their earlier visits to the house indicated, the officers were trying to find someone to talk to about Upshaw's whereabouts. The officers did not approach Walker with the purpose of "discovering incriminating evidence" — just to speak with the homeowner, which is conduct that falls squarely within the scope of the knock and talk exception. Jardines, 131 S. Ct. at 1416. Walker asserts that the officers were engaged in a search because they did not know that he was in the vehicle when they approached it. They knew, however, that a dome light was on, which indicated that a person

5

might well be inside, and that fact was confirmed when they approached the car. An officer may not know that a homeowner is inside a home when knocking on the door, but the knock and talk exception permits knocking on the door to find out. See id. at 1415.

Second, approaching Walker's vehicle parked inside of his open-sided carport, instead of going to his front door, did not exceed the geographic limit on the knock and talk exception. A "small departure from the front door . . . when seeking to contact the occupants" is permissible. Taylor, 458 F.3d at 1205 (citation and quotation marks omitted); cf. Coffin v. Brandau, 642 F.3d 999, 1005, 1012 (11th Cir. 2011) (contrasting a garage attached to a home and enclosed by three walls and a door with a carport that is open and exposed to the public in deciding whether an officer's entry into the garage violated the Fourth Amendment). The carport was located right next to the house and the officers entered it because they had reason to believe the house's occupant was sitting in the car parked inside. They did not exceed the scope of the knock and talk exception.

Walker also contends that going to someone's house before sunrise to knock on the door is unreasonable and exceeds the implied invitation that underlies the knock and talk exception. That contention fails in light of all the circumstances surrounding the officers' actions. They had already visited the house twice to

6

speak with its owner. When they arrived the third time at 5:04 a.m. and saw a light on inside the vehicle, it was not unreasonable to think that someone was inside it. Although many people might normally be asleep at that early hour, the light on in the car indicated otherwise. The officers also saw lights on in the house. They did not act unreasonably by approaching the vehicle, tapping on the window, and asking Walker to step out.[1] Because their conduct was reasonable, the officers complied with the Fourth Amendment. See Brigham City, 547 U.S. at 403, 406–07, 126 S. Ct. at 1947, 1949. The district court therefore did not err in denying Walker's motion to suppress the evidence of counterfeit currency found in the home.

**AFFIRMED.**

---

[1] Walker argues that under Brigham City v. Stuart, 547 U.S. 398, 126 S. Ct. 1943 (2006), any warrantless entry into the home or curtilage that occurs in the wee hours of the morning must be accompanied by exigent circumstances. That decision held that police officers' warrantless entry into a home at 3:00 a.m. was reasonable because exigent circumstances existed. Id. at 403–07, 126 S. Ct. at 1947–49. It did not hold, however, that exigent circumstances must exist for a warrantless early morning knock and talk, which is not considered a search.