[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11056

Non-Argument Calendar

_____

RICHARD JOHN LUCIBELLA,

Plaintiff-Appellee,

*versus*

TOWN OF OCEAN RIDGE,

Defendant,

RICHARD ERMERI,
Officer,
NUBIA PLESNIK,
Officer, a.k.a. Nubia Savino,

2                    Opinion of the Court                    22-11056

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:20-cv-82156-AMC

_____

Before WILSON, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

After an altercation between Plaintiff Richard Lucibella and a couple of Ocean Ridge, Florida, police officers, Lucibella sued under 42 U.S.C. § 1983, alleging that the officers violated his Fourth Amendment rights. A district court denied Officer Richard Ermeri and Officer Nubia Plesnik's motion for summary judgment. The officers now appeal, arguing that the district court erred by denying them qualified immunity on Lucibella's unreasonable search and excessive force claims. Because we agree that Officers Ermeri and Plesnik are not entitled to qualified immunity at this stage of the proceedings, we affirm.

## I.    Background

### a.  *Factual Background* [1]

On October 22, 2016, Lucibella and Steven Wohlfiel, an off-duty lieutenant for the Ocean Ridge Police Department, met at Lucibella's house to socialize.  After attending a cocktail party at a neighbor's house, Lucibella and Wohlfiel returned to Lucibella's house and sat on Lucibella's backyard patio with alcoholic beverages.  While sitting and discussing "family issues," Wohlfiel suddenly fired his handgun five times into the ground around ten to twelve feet in front of him.  Wohlfiel then placed the firearm on a table, and Lucibella picked up the firearm and put it on his lap.

Soon thereafter, the Ocean Ridge Police Department received a 911 call reporting shots in the area.  Officer Ermeri responded to the call.  Unsure of the gunshots' origin, he spoke to a group of people walking in the area, who directed him to the area

---

[1] At the summary judgment stage, "we view all evidence and factual inferences in the light most favorable to the non-moving party—here, [Lucibella]—and we resolve all issues of material fact in [Lucibella's] favor." *Perez v. Suszczynski*, 809 F.3d 1213, 1217 (11th Cir. 2016) (quotation omitted); *see also Cantu v. City of Dothan, Ala.*, 974 F.3d 1217, 1228 (11th Cir. 2020) ("When considering a motion for summary judgment, including one asserting qualified immunity, courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and when conflicts arise between the facts evidenced by the parties, [they must] credit the nonmoving party's version." (quotations omitted)).  Thus, although the facts are hotly disputed, the record supports the following factual account when viewed in the light most favorable to Lucibella.

of Lucibella's and his neighbor's homes. Officer Ermeri first investigated the house next to Lucibella's but left after he observed that the situation appeared normal. Sergeant William Hallahan, who also responded to the 911 call, joined Officer Ermeri, and the two officers approached Lucibella's backyard, looked through the wrought iron gate, and saw Lucibella and Wohlfiel sitting on the patio.[2] The patio area was dark with no outside lighting. Officer Plesnik, another responder, met Sergeant Hallahan and Officer Ermeri outside the gate but left two or three seconds later. Officer Plesnik left because she knew Lucibella and Wohlfiel and "thought at the time [that the officers were] wasting [their] time." Officer Ermeri asked if Lucibella and Wohlfiel had heard any gunfire, and Wohlfiel responded: "get the fuck out of here." Sergeant Hallahan took that response to mean that "they didn't see anything" and, because he "didn't see anything out of the ordinary," Hallahan left too. Officer Ermeri, however, entered Lucibella's backyard through the gate without a warrant and without permission.

As Officer Ermeri approached the men, he saw shell casings on the ground and told Lucibella that he saw Lucibella sitting on a firearm. Officer Ermeri radioed Sergeant Hallahan and told him

---

[2] Lucibella's backyard was surrounded by tall hedges and a five-foot concrete wall and was accessible through a short, wrought iron gate. Officer Ermeri recognized Lucibella from prior, friendly interactions and knew that Lucibella was the town commissioner. Although Officer Ermeri knew Wohlfiel as a superior officer with the Ocean Ridge Police Department, he did not recognize Wohlfiel until he entered the backyard and approached the men.

that he located the weapon, and Sergeant Hallahan and Officer Plesnik reported to Lucibella's backyard.[3] Officer Ermeri asked Lucibella about the firearm, and Lucibella gave it to Officer Ermeri without resistance. Lucibella also emptied his pockets and told Officer Ermeri that he did not want to speak with him and asked him to "get off [his] property."

Sergeant Hallahan informed Lucibella and Wohlfiel that they were investigating a report of gunshots in the area. Lucibella did not respond to Sergeant Hallahan, and Wohlfiel stated: "we don't have to say anything." Sergeant Hallahan then stepped away from the situation and called the police chief. The police chief stated that there was no cause to arrest anyone and—considering that neither Lucibella nor Wohlfiel would talk to them—advised the officers to leave Lucibella's home and take the gun and the casings back to the department to do a report and reevaluate the situation.

During this time, Lucibella wanted to go into his house to retrieve a drink. Officer Ermeri blocked Lucibella's path to the door, so Lucibella asked his significant other, Barbara Ceuleers, who was in the doorway, to get him a drink. Ceuleers maintains that Officer Plesnik permitted her to get Lucibella a drink. When she returned with the drink, although Officer Ermeri told Ceuleers

---

[3] When Officer Plesnik heard Officer Ermeri ask Sergeant Hallahan to come to the backyard over the radio, she went as well.

not to hand Lucibella the drink, Lucibella and others heard Officer Plesnik say "[l]et him have a drink."

When Lucibella attempted to retrieve the drink, Officer Ermeri pushed him away. In an angry response, Lucibella poked Officer Ermeri's chest two or three times and said, "[t]ake your F-ing hands off me." Then, as Lucibella reached for the drink again, Officer Ermeri grabbed each of Lucibella's arms and performed a "botched leg sweep," causing Lucibella to fall face first into the marble floor, which he alleges rendered him unconscious, broke his glasses, and caused bleeding, swelling, the blackening of his left eye socket, and a laceration above his eyebrow.

Once Lucibella was on the ground, Officer Plesnik performed a "knee drop," asserting her full weight onto Lucibella's back, which he alleges broke three of his ribs and rendered him bedridden.

After Lucibella was handcuffed, he refused to follow Officer Ermeri's instructions and called him names. Eventually, Officer Plesnik escorted Lucibella to a patrol vehicle to be transported to the Ocean Ridge Police Department.

b. *Procedural History*

In response to the altercation, Lucibella was charged with (1) battery on a law enforcement officer (a felony); (2) resisting arrest with violence (a felony); and (3) using a firearm while under the influence of alcoholic beverage (a misdemeanor). The prosecutor later dismissed the charge for using a firearm while

under the influence. The jury returned a verdict of not guilty on the remaining two felony charges but found Lucibella guilty of a lesser included offense—misdemeanor battery on Officer Ermeri. Florida's Fourth District Court of Appeal affirmed Lucibella's conviction.

Lucibella then filed a civil complaint against Officer Ermeri and Officer Plesnik under § 1983.[4] Officers Ermeri and Plesnik jointly moved for summary judgment on Lucibella's claims for excessive force and unreasonable search in violation of the Fourth Amendment based on qualified immunity. The district court denied the officers' motion for summary judgment as to both claims.

## II.     Standard of Review

We review *de novo* the district court's denial of summary judgment and determination that Officers Ermeri and Plesnik are not entitled to qualified immunity. *Perez v. Suszczynski*, 809 F.3d 1213, 1216 (11th Cir. 2016). And, as mentioned above, "[w]e

---

[4] Lucibella's nine-count complaint, which was filed in state court, also named the Town of Ocean Ridge as a defendant. After the Town of Ocean Ridge removed the case to federal court, Defendants moved to dismiss seven of the claims in Lucibella's amended complaint, and the district court dismissed six of the claims with prejudice. The parties then filed a joint stipulation dismissing another claim, meaning that only Count II (excessive force in violation of the Fourth Amendment against Officers Ermeri and Plesnik) and Count VII (unreasonable search in violation of the Fourth Amendment against Officers Ermeri and Plesnik) remained.

review the evidence in the light most favorable to the nonmovant." *Wade v. United States*, 13 F.4th 1217, 1223 (11th Cir. 2021). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

Accordingly, the legal question of whether Officers Ermeri and Plesnik are entitled to qualified immunity must be determined under Lucibella's version of facts as the non-movant. *Perez*, 809 F.3d at 1218. "We must review the evidence in this manner because the issues appealed here concern not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law." *Id.* at 1217 (quotation omitted). Indeed, "what are considered the 'facts' may not turn out to be the 'actual' facts if the case goes to trial; rather, they are the 'facts' at this stage of the proceedings." *Id.*

## III.    Discussion

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions[] generally are shielded from liability [or suit] for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wade*, 13 F.4th at 1225 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Here, the parties do not dispute that Officers Ermeri and Plesnik were performing a job-related function and acting in their discretionary authority during the October 22, 2016, events.

Accordingly, the burden shifted to Lucibella to establish that the officers were not entitled to qualified immunity by showing that (1) taken in the light most favorable to Lucibella, the facts show "that [the officers] violated a constitutional right and (2) that the right was clearly established at the time of the alleged violation." *Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019).

Under the clearly established prong, "the dispositive question is whether the law at the time of the challenged conduct gave the government official fair warning that his conduct was unconstitutional." *Wade*, 13 F.4th at 1225. "Thus, we consider what an objectively reasonable official must have known at the pertinent time and place and ask whether it would be clear to a reasonable officer that his conduct was unlawful in the situation [he] confronted." *Id.* at 1226 (quotations omitted).

A plaintiff may show that the law was clearly established in three ways. *Patel v. City of Madison, Ala.*, 959 F.3d 1330, 1343 (11th Cir. 2020). First, a plaintiff can point "to a materially similar case [that] has already been decided." *Echols v. Lawton*, 913 F.3d 1313, 1324 (11th Cir. 2019) (quotation omitted). "Second, if the plaintiff cannot find a materially similar factual case from the Supreme Court, our Court, or, in this case, the Supreme Court of [Florida], a plaintiff can show that a broader, clearly established principle should control the novel facts in this situation." *Patel*, 959 F.3d at 1343 (quotation omitted). This broader principle "must establish with 'obvious clarity' that 'in the light of pre-existing law the unlawfulness [of the official's conduct is] apparent.'" *Echols*,

913 F.3d at 1324 (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1353 (11th Cir. 2002)). "Third, a plaintiff may rely on the obvious clarity path, which applies when the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." *Patel*, 959 F.3d at 1343 (quotations omitted).

> a. *The officers are not entitled to qualified immunity on Lucibella's unreasonable search claim*

> > i. Officers Ermeri and Plesnik violated Lucibella's Fourth Amendment rights by executing an unreasonable search

Beginning with Lucibella's unreasonable search claim, Officers Ermeri and Plesnik argue that their entry and search of Lucibella's curtilage was justified, and therefore lawful, because exigent circumstances existed. The officers maintain that they "had an objectively reasonable basis for believing that medical assistance was needed, that persons were in danger, or both when they entered [Lucibella's] back[]yard." We disagree.

"[W]hen it comes to the Fourth Amendment, the home is first among equals." *Florida v. Jardines*, 569 U.S. 1, 6 (2013). "At the Amendment's 'very core'" is the right of a person "to retreat into his own home and there be free from unreasonable governmental intrusion." *Id.* (quotation omitted). This protection extends to a home's "curtilage," which is "the area immediately

surrounding and associated with the home." *Id.* (quotation omitted).

Warrantless searches of a home's curtilage are presumptively unreasonable. *United States v. Walker*, 799 F.3d 1361, 1363 (11th Cir. 2015). This general rule is "subject only to a few jealously and carefully drawn exceptions." *McClish v. Nugent*, 483 F.3d 1231, 1240 (11th Cir. 2007) (quotation omitted). One such exception is made for "exigent circumstances." *Id.* "The exigent circumstances exception recognizes a warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant." *United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002) (quotation omitted).

The most urgent of these exigencies—known as the emergency aid exception—excuses police compliance with the warrant requirement in order "to protect or preserve life." *Id.* at 1335; *Kentucky v. King*, 563 U.S. 452, 460 (2011). "Under the 'emergency aid' exception, . . . 'officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.'" *United States v. Timmann*, 741 F.3d 1170, 1178 (11th Cir. 2013) (quoting *Brigham City, Utah, v. Stuart*, 547 U.S. 398, 403 (2006)). "In order for the exception to apply, officers must have an objectively reasonable belief that someone inside is 'seriously injured or threatened with such injury,' and is in need of immediate aid." *Id.* (quoting *Brigham City*, 547 U.S. at 403–04). "The officer's subjective

motivation is irrelevant." *Id.* (quotation omitted). And "[t]he government bears the burden of demonstrating that the exception applies." *Id.* at 1178–79.

Officer Ermeri contends that the emergency aid exception justified his entry into Lucibella's backyard. When Officer Ermeri entered Lucibella's backyard without permission and without a warrant, Lucibella and Wohlfiel were sitting on the patio. According to Lucibella, no tumultuous scene or chaos existed. Officer Ermeri did not observe any violence, threatening behavior, or an injured person. There was nothing to suggest the presence of illicit or dangerous activity. Indeed, under Lucibella's version of the facts, at this point, Officer Ermeri did not see anything that indicated that this was the house from which the gunshots originated because Officer Ermeri did not see Lucibella with a firearm until Officer Ermeri entered the backyard.[5] Indeed, Sergeant Hallahan and Officer Plesnik had already peered through the gate and left to continue the investigation elsewhere because they did not see anything out of the ordinary in Lucibella's backyard.

This situation bears none of the typical "indicia of an urgent, ongoing emergency." *Timmann*, 741 F.3d at 1180. Considering

---

[5] We note that whether Officer Ermeri saw the firearm before or after he entered Lucibella's backyard is a point that the parties vigorously dispute. At this stage of the proceedings, we must credit Lucibella's version of the facts. *See Cantu*, 974 F.3d at 1228.

the circumstances, it was not objectively reasonable for Officer Ermeri to believe that someone inside of Lucibella's house or in Lucibella's backyard was in danger or in need of immediate aid. Accordingly, we conclude that under these facts, the emergency aid exception did not justify Officer Ermeri's warrantless entry onto Lucibella's curtilage.

And we reach the same conclusion with respect to Officer Plesnik—who also relies on the emergency aid exception—for largely the same reasons. Soon after Officer Ermeri entered Lucibella's property, he radioed Sergeant Hallahan that he located the weapon, and both Sergeant Hallahan and Officer Plesnik arrived on scene. Under Lucibella's version of the facts, the scene that Officer Plesnik entered was largely the same as the one that Officer Ermeri first encountered. Although Officer Plesnik now arrived with the knowledge that there was a firearm on site, the mere presence of a firearm—without more—did not transform the non-exigent scene into an exigent circumstance and trigger the emergency aid exception. Indeed, by the time Officer Plesnik arrived, Officer Ermeri had already taken the firearm from Lucibella without incident. Accordingly, under these facts, it was not objectively reasonable for an officer to believe that an ongoing emergency existed or that anyone was in need of protection,

14                    Opinion of the Court                    22-11056

injured, or in danger of imminent injury. As such, we conclude that Officer Plesnik cannot satisfy the emergency aid exception.[6]

Without an exception to justify their entry onto and search of Lucibella's property, Officers Ermeri and Plesnik's warrantless search violated Lucibella's Fourth Amendment rights.

---

[6] The officers attempt to analogize this case to *Holloway*, but their argument is unavailing. In *Holloway*, officers responded to emergency calls reporting gunshots and arguing overheard at a mobile home. 290 F.3d at 1332. While on their way to the scene, the officers received a second dispatch indicating that a 911 caller reported continuing gunshots and arguing. *Id.* When they arrived, the officers found Mr. and Mrs. Holloway on the porch of the mobile home, and an officer "drew his service weapon as he exited his vehicle" "[d]ue to the high-risk nature of the 911 call" and instructed the couple "to raise their hands into view." *Id.* Mrs. Holloway did not comply with the officer's instructions, prompting the officer to threaten to use his pepper spray. *Id.* Eventually, a sergeant who had arrived to provide additional support "stepped in to secure Mrs. Holloway." *Id.* at 1333.

The *Holloway* circumstances are markedly different from those that Officers Ermeri and Plesnik encountered. Neither officer even knew which house the gunfire came from, and Officer Plesnik left Lucibella's house to continue searching for the source of the gunfire after observing that nothing abnormal was occurring in Lucibella's backyard. Unlike *Holloway*, where the officer drew his weapon and threatened to use pepper spray, here, the officers encountered no threat upon their arrival and had no occasion to draw their weapons. Indeed, Lucibella obeyed Officer Ermeri's instructions—unlike Mrs. Holloway—and relinquished his gun without resistance.

> ii. Lucibella's right to be free from an unreasonable search was clearly established

Turning to the second prong of the qualified immunity analysis, we conclude that the prohibition against warrantless searches of a home's curtilage, which is clearly established by the Fourth Amendment and our caselaw, put Officers Ermeri and Plesnik on notice that their conduct was unlawful and that no reasonable officer would have believed that he faced exigent circumstances that justified acting without a warrant. *Patel*, 959 F.3d at 1343 (explaining that a plaintiff may establish that the law is clearly established by pointing to a "broader, clearly established principle that should control the novel facts in [the] situation" (quotation omitted)).

"The touchstone of qualified immunity is notice." *Moore v. Pederson*, 806 F.3d 1036, 1046 (11th Cir. 2015). "The violation of a constitutional right is clearly established if a reasonable official would understand that his conduct violates that right." *Id.* at 1046–47. As an initial matter, the Fourth Amendment and our caselaw clearly establish that the warrantless search of a home's curtilage is presumptively unreasonable. *See Walker*, 799 F.3d at 1363. Even so, we have repeatedly ruled that the emergency aid exception is met when an officer enters a home "to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Timmann*, 741 F.3d at 1178 (quoting *Brigham City*, 547 U.S. at 403). And we have explained that, "[i]n order for the exception to apply, officers must have an objectively reasonable

belief that someone inside is seriously injured or threatened with such injury, and is in need of immediate aid." *Id.* (quotation omitted). The parameters of this exception were well-established at the time of this incident: "the police [must] reasonably believe an emergency exists which calls for an immediate response to protect citizens from imminent danger." *Holloway*, 290 F.3d at 1337.

Here, viewing the facts in Lucibella's favor, the situation that the officers confronted—two men quietly sitting on a back patio—bears none of the indicia of an urgent, ongoing emergency. Indeed, there are no facts indicating that there was an emergency at all—much less one involving endangerment to life, an injured person, or even imminent injury. Illustratively, Sergeant Hallahan and Officer Plesnik left Lucibella's house after observing that everything appeared normal. Accordingly, no officer would have had an objectively reasonable belief that someone "faced an emergency that justified acting without a warrant." *Missouri v. McNeely*, 569 U.S. 141, 149 (2013). The officers' decision to proceed onto Lucibella's property—without a warrant and without a justification for a warrantless entry—violated clearly established law. *See Moore*, 806 F.3d at 1046.

b. *The officers are not entitled to qualified immunity on Lucibella's excessive force claim*

   i. Officers Ermeri and Plesnik violated Lucibella's Fourth Amendment rights by using excessive force

Turning to Lucibella's second claim, Officers Ermeri and Plesnik argue that their use of force against Lucibella was objectively reasonable, not excessive, and that the amount of force they used "was well within proportion to the need for application of force to gain control of Lucibella and effectuate the arrest." We disagree.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002)). "Determining whether an officer's use of force is reasonable 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Prosper v. Martin*, 989 F.3d 1242, 1251 (11th Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "We measure excessive-force claims under the Fourth Amendment under an objective-reasonableness standard." *Patel*, 959 F.3d at 1338. "That standard requires us to ask whether the officer's conduct was objectively reasonable in light of the facts confronting the officer." *Id.*

(alteration adopted and quotation omitted). In assessing reasonableness, "we judge the officer's use of force on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1272 (11th Cir. 2021).

"Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Baxter v. Roberts*, 54 F.4th 1241, 1268–69 (11th Cir. 2022). Therefore, during an arrest, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Id.* at 1269.

To balance "the necessity of using some force attendant to an arrest against the arrestee's constitutional rights," the Supreme Court has directed that we consider (1) the severity of the crime at issue; (2) whether the individual poses an immediate threat to the safety of officers or others; and (3) whether the individual is actively resisting arrest or attempting to evade arrest by flight. *Lee*, 284 F.3d at 1197–98. We also consider the need for the use of force, the relationship between the need for force and the amount of force used, and "the extent of the injury inflicted." *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1353 (11th Cir. 2015) (quotation omitted).

We have held that an officer violates the Fourth Amendment and is denied qualified immunity when he uses "gratuitous and excessive force against a suspect who is under

control, not resisting, and obeying commands." *Patel*, 959 F.3d at 1339 (quotation omitted).

Construing the facts in the light most favorable to Lucibella, as we must, we conclude that a jury could reasonably find that the officers used excessive force during arrest. According to Lucibella, when the officers approached him, he was peacefully sitting on his patio. The officers were investigating alleged gunshots in the area but were not aware of Lucibella committing any crime. When asked, Lucibella readily surrendered the firearm to Officer Ermeri, emptied his pockets, and did not attempt to evade arrest. And although Lucibella admits to angrily poking Officer Ermeri in the chest in response to Officer Ermeri pushing him, Lucibella contends that he not otherwise pose any threat to the officers' safety. Then, without notice, Lucibella claims that Officer Ermeri grabbed him by the arms and kicked his legs out from under him so that Lucibella fell face first into the marble floor. According to Lucibella, this fall knocked him unconscious, broke his glasses, and caused bleeding, swelling, bruising, and a laceration above his eyebrow. Then, while he was in an unconscious state, Lucibella claims that Officer Plesnik performed a "knee drop" on him by asserting her full weight on his back and broke three of his ribs.[7]

---

[7] We emphasize that the parties' versions of events directly conflict at every turn. Officer Ermeri contends that Lucibella was "belligerent," "very confrontational," and "recognizably intoxicated" when Officer Ermeri approached him, and Lucibella disputes each of these assertions and maintains

Under this version of events—where Lucibella was not evading or resisting arrest and posed no threat to the officers—a jury could reasonably find that Officer Ermeri used unnecessary and excessive force during arrest when he performed a "botched leg sweep" with no notice that rendered Lucibella unconscious and that Officer Plesnik used unnecessary and excessive force during arrest when she knee dropped Lucibella while he was unconscious, breaking three of his ribs. *See Patel*, 959 F.3d at 1339 (explaining that in cases where an officer uses "gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands," we have "ruled that the officer violates the Fourth Amendment and is denied qualified immunity").

> ii. Lucibella's right to be free from an excessive use of force was clearly established

Turning to the second prong of the qualified immunity analysis, under Lucibella's account of the facts, he can show that

---

that he and Wohlfiel were peacefully sitting on the patio when Officer Ermeri entered Lucibella's backyard. The same goes for the parties' accounts of the force used during Lucibella's arrest. Officer Ermeri maintains that Lucibella "aggressively" "attempted to walk through" Officer Ermeri, yelled at Officer Ermeri, grabbed Officer Ermeri behind the head, and scratched Officer Ermeri before Officer Ermeri restrained Lucibella. Lucibella vehemently denies this occurred and instead alleges that Officer Ermeri performed a botched leg sweep on Lucibella with no notice. As explained, we cannot resolve these factual disputes on summary judgment and are restrained to apply the law to the facts viewed in the light most favorable to Lucibella.

the officers violated clearly established law.[8]  *See Patel*, 959 F.3d at 1343 (explaining that a plaintiff can show that the law is clearly established by showing "that a broader, clearly established principle should control the novel facts in this situation" (quotation omitted)).

Lucibella relies on *Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011), to argue that our cases clearly establish that certain "force is excessive where the suspect is non-violent and has not resisted arrest."  In *Fils*, we concluded that the officers should have known that their conduct clearly violated the plaintiff's Fourth Amendment rights when the officers tased the plaintiff "even though he committed at most a minor offense; did not resist arrest; he did not threaten anyone; and he did not disobey any instructions . . . ."  647 F.3d at 1292.  We reasoned that the facts in *Fils* were "sufficiently similar to the facts of [*Priester v. City of Riviera Beach, Florida*, 208 F.3d 919 (11th Cir. 2000)] and [*Vinyard v. Wilson*, 311 F.3d 1340, 1353 (11th Cir. 2002)] [such that the officers] were on notice that their conduct violated [the plaintiff's rights]."  *Id.*  "In *Priester*, the [officer] set his attack dog on the plaintiff even though the plaintiff had submitted to the [officer's]

---

[8] Although the district court did not decide whether the law was clearly established as to Lucibella's excessive force claim, it ultimately denied qualified immunity to the officers.  Where a district court does "not state the facts upon which it based its decision to deny summary judgment, we conduct our own review of the record to determine what facts the district court likely assumed."  *Perez*, 809 F.3d at 1218.

every command and was laying flat on the ground." *Id.* (citing *Priester*, 208 F.3d at 927). And in *Vinyard*, "the [officer] sprayed pepper spray into the eyes of a non-violent plaintiff, who was handcuffed safely in the back seat of the [officer's] police car, and had threatened no one." *Id.* (citing *Vinyard*, 311 F.3d at 1347–48). We concluded that "[t]hese two cases clearly establish[ed] that such force is excessive where the suspect is non-violent and has not resisted arrest." *Id.* "While these cases [were] not identical to [the *Fils* plaintiff's] case," we explained that "they need not be 'materially similar'; the precedent need only provide the [officers] with 'fair warning.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Accepting Lucibella's version of the facts at this stage, a jury could reasonably find that Officer Ermeri violated this principle.[9]

---

[9] The Supreme Court and our Court have explained that "officials can still be on notice that their conduct violates established law even in novel factual circumstances," *Hope*, 536 U.S. at 741, but cautioned that clearly established law should not be defined "at too high a level of generality," *City of Tahlequah, Okla. v. Bond*, 142 S. Ct. 9, 11 (2021). *See Mercado v. City of Orlando*, 407 F.3d 1152, 1159–60 (11th Cir. 2005) (explaining that "a broader, clearly established principle [can] control the novel facts in [a] situation" and relying on the broad principle that "[u]sing deadly force in a situation that clearly would not justify its use is unreasonable under the Fourth Amendment" to conclude that an officer was not entitled to qualified immunity where the officer pointed to no "controlling case law" with materially similar facts). Accordingly, in *Fils*—which involved the use of a taser—we concluded that the law was clearly established based on cases involving factually distinguishable circumstances (a dog attack and pepper

Namely, a jury could reasonably find that Lucibella acted in a non-violent manner, did not resist arrest,[10] and obeyed Officer Ermeri's commands to turn over the firearm and empty his pockets and that Officer Ermeri used unprovoked and excessive force when he grabbed Lucibella's arms and threw him on the ground without notice. *See Fils*, 647 F.3d at 1292; *see also Patel*, 959 F.3d at 1343 (explaining that a jury could reasonably find that an officer violated clearly established Fourth Amendment law if it believed the plaintiff's version of events—under which the plaintiff was not resisting and was complying with the officer's commands when the officer executed a leg sweep on the plaintiff). Thus, at this stage, Lucibella satisfies his burden to show that Officer Ermeri violated clearly established law.

And the same goes for Officer Plesnik. A jury could find that Officer Plesnik used excessive force against a suspect who was non-violent and had not resisted arrest when she performed a knee drop

---

spray). *Fils*, 647 F.3d at 1292; *see also Hope*, 536 U.S. at 743 (explaining that "[t]he reasoning, though not the holding" in a prior case may "sen[d] the same message to reasonable officers in that Circuit"). Likewise, we apply the rule clearly established in *Fils* to this case.

[10] We note that although Lucibella acknowledges that he poked Officer Ermeri two or three times in the chest, Lucibella maintains that he did not act violently or resist arrest when he poked Officer Ermeri's chest. At the summary judgment stage, we must "view all evidence and factual inferences in the light most favorable to" Lucibella and conclude that a jury could reasonably find that Lucibella was not using violence or resisting arrest when he poked Officer Ermeri. *Perez*, 809 F.3d at 1217.

on Lucibella—while he was lying on the ground unconscious—with such force that she broke three of his ribs and he was rendered bedridden.  *See Fils*, 647 F.3d at 1292.

Considering the circumstances in this case and crediting Lucibella's version of events and the severity of his injuries, we conclude that Officers Ermeri and Plesnik had fair warning that use of excessive force on a suspect when that "suspect is non-violent and has not resisted arrest" violates the Fourth Amendment but nonetheless violated this clearly established principle.  *Fils*, 647 F.3d at 1292.  Accordingly, we conclude that summary judgment was properly denied to both officers at this stage in the proceedings.

## IV.    Conclusion

Although we affirm the district court, our holding does not mean that the officers will ultimately be precluded from enjoying qualified immunity.  *See Perez*, 809 F.3d at 1223.  Numerous disputed issues of material fact exist—issues that we cannot resolve but that a factfinder may ultimately resolve in the officers' favor.  *Id.*; *see Smith v. Mattox*, 127 F.3d 1416, 1417 (11th Cir. 1997) ("This court . . . avoids all credibility judgments.").  Accordingly, at this stage of litigation, we must view the facts only in the light most favorable to Lucibella and affirm the district court's denial of summary judgment.

**AFFIRMED.**