[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 25-10341

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

VINCENT EDWARD WARDLOW,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:24-cr-00041-TPB-KCD-1

_____

Before GRANT, KIDD, and WILSON, Circuit Judges.

PER CURIAM:

Vincent Wardlow challenges the district court's denial of his motion to suppress evidence of a gun found during the search of his vehicle after a traffic stop. After careful review, we affirm.

## I. BACKGROUND

Shortly before 3:30 a.m. on March 19, 2023, Deputy Derek Matera was on patrol when he saw a car driving 67 miles per hour in a 45 mile-per-hour zone. As he began to follow the vehicle, Deputy Matera allegedly detected the smell of marijuana and concluded that it was likely coming from the car he was following, as there did not appear to be anyone else on the road. After following the car for about half a mile, Deputy Matera decided to stop the car. The driver, later identified as Wardlow, pulled over and rolled down his window. Deputy Matera detected "an overwhelming odor of marijuana" coming from the open driver's side window and did not see anyone or anything else in the area that could be producing the smell.

Deputy Matera then "continued . . . the traffic stop like normal" until his partner arrived, at which time he asked Wardlow to exit the vehicle so that he could search it "[b]ased on the odor of marijuana." Deputy Matera found a gun under the passenger seat, but no marijuana. Deputy Matera released Wardlow from the stop with only a warning but kept the gun and logged it as evidence. DNA testing later connected the gun to Wardlow.

In April 2024, Wardlow was indicted for possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). He then moved to suppress the firearm and DNA evidence obtained as a result of the traffic stop, arguing that his car was searched only because of Deputy Matera's unsupported contention that he smelled marijuana coming from the vehicle. The government responded in opposition, maintaining that Deputy Matera was permitted to search the car to find the source of the odor he had identified. It further noted that Florida's recent legalization of medical marijuana did not defeat a probable cause finding on that basis.

At a suppression hearing, the government offered testimony from Deputy Matera, who described the traffic stop and explained that, from his five-and-a-half years with the Lee County Sheriff's Office, he was familiar with the smell of marijuana and had been involved in traffic stops with varying degrees of marijuana odor present. Upon questioning from the district judge, Deputy Matera clarified that, although he knew Wardlow was a convicted felon at the time of the stop, he chose not to arrest him because Wardlow said that he had borrowed the car from his mother, who had a permit for the recovered gun.

On cross-examination, Deputy Matera confirmed that speeding was "not an arrestable offense in Florida[,]" and his only basis for the search was the odor of marijuana. His testimony was also the only evidence of any marijuana, as there was no video evidence from the traffic stop and he did not make any written notes

or radio communications about the marijuana smell. He also admitted that he could not distinguish between the odor of burned and fresh marijuana, he did not see Wardlow throw anything from the vehicle while driving, and he did not investigate the area around the car for discarded contraband. Deputy Matera further confirmed that he did not find any remnants of marijuana, even though he conducted a "very thorough" search. He agreed that "th[e] car was very, very clean, like it had recently been cleaned[.]"

Wardlow did not present any witnesses but argued that Deputy Matera's testimony about the smell of marijuana was dubious because: (1) there was no physical evidence found in the car; (2) Deputy Matera did not see Wardlow discard any contraband; and (3) Wardlow's window was likely rolled up while driving. In response, the government explained that it was not "inconceivable that [one] could be driving behind a vehicle and smell marijuana" because we have "all driven on roads before and smelled strong odors coming from particular vehicles." It emphasized the "fleeting contact" Deputy Matera had with Wardlow and suggested that, just moments earlier, Wardlow could have had a passenger who was smoking or, as the district judge suggested, been "hotboxing." The government also argued that it was not feasible for Deputy Matera to search the roadside for evidence in the middle of the night. The district judge stated that times had changed and people smelling of marijuana was more common, and, based on his recent personal experiences, he believed that there could be a strong odor of marijuana coming out of the car.

The district court thereafter issued an order denying Wardlow's motion to suppress. The court found Deputy Matera's testimony to be credible because he explained his extensive training and experience with marijuana as a police officer and "was professional, calm, and courteous" throughout the hearing. It elaborated that the lack of marijuana in the car did not "defeat[] or minimize[]" Deputy Matera's credibility, considering that Wardlow "did not present any testimony or evidence to contradict Deputy Matera's testimony."

The court further noted that, although "Deputy Matera's testimony that he could smell marijuana when he was driving behind the vehicle may seem like a stretch, there [wa]s no denying that marijuana has a very potent and distinct odor." It also stated that other "potent and distinct odors," such as those of skunks and wildfires, permeate closed car windows, and Deputy Matera credibly testified to detecting a strong smell of marijuana when he was close to the car during the traffic stop. The court further noted that the lack of physical evidence in the car "[wa]s not necessarily surprising," as Wardlow could have engaged in "hotboxing" or a similar practice that allowed him to "fully smoke[] all the marijuana and discard[] whatever paraphernalia he was using to consume it . . . ."

Wardlow then proceeded to a bench trial, and the district court adjudicated him guilty of the single-count indictment and

6                    Opinion of the Court                    25-10341

sentenced him to 12 months and 1 day of imprisonment with no supervised release. This appeal followed.[1]

## II. STANDARD OF REVIEW

"A denial of a motion to suppress involves mixed questions of fact and law." *United States v. Campbell*, 26 F.4th 860, 870 (11th Cir. 2022) (en banc) (quotation marks omitted). Thus, we review the district court's findings of fact for clear error and its application of law to those facts *de novo*. *Id.* "We construe all facts in the light most favorable to the party who prevailed in the district court and give 'substantial deference to the factfinder's credibility determinations, both explicit and implicit.'" *United States v. Walker*, 799 F.3d 1361, 1363 (11th Cir. 2015) (quoting *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012)). "We review for plain error any theories supporting a motion to suppress that were not raised below." *United States v. Bruce*, 977 F.3d 1112, 1116 (11th Cir. 2020).

## III. DISCUSSION

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV. Under the exclusionary rule, evidence cannot be used against a defendant in a criminal

---

[1] Wardlow has completed his sentence. However, his appeal is not moot, "[b]ecause a number of disabilities may attach to a convicted defendant even after he has left prison . . . ." *United States v. Corrigan*, 144 F.3d 763, 766 n.3 (11th Cir. 1998) (quotation marks and brackets omitted); *see also Minnesota v. Dickerson*, 508 U.S. 366, 371 n.2 (1993) ("[T]he possibility of a criminal defendant's suffering 'collateral legal consequences' from a sentence already served precludes a finding of mootness." (quotation marks omitted)).

trial if it was obtained through an encounter with police that violated the Fourth Amendment. *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003).

Generally, police officers must obtain a warrant supported by probable cause to justify a search under the Fourth Amendment. *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005). But the automobile exception allows police to conduct a warrantless search of a car if (1) it is readily mobile and (2) there is probable cause to believe that it contains contraband or evidence of a crime. *United States v. Lanzon*, 639 F.3d 1293, 1299–300 (11th Cir. 2011). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in the vehicle under the totality of the circumstances." *Id.* at 1300.

On appeal, Wardlow does not challenge the legality of the traffic stop or argue that his car was not readily mobile. Instead, he challenges whether Deputy Matera had sufficient cause to search the vehicle. Since Deputy Matera was the only witness who testified at the suppression hearing, and his testimony was the only evidence of the presence of marijuana in Wardlow's vehicle, this case rises and falls on Deputy Matera's credibility.

We have previously held that an officer's credible testimony that he smelled marijuana establishes probable cause to search a vehicle. *See, e.g.*, *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc) ("There is no doubt that the agent's suspicions rose to the level of probable cause when, as the door stood open, he detected what he knew from his law enforcement experience to

be the odor of marijuana."); *United States v. Johns*, 469 U.S. 478, 482 (1985) ("After the officers came closer and detected the distinct odor of marihuana, they had probable cause to believe that the vehicles contained contraband."); *Merricks v. Adkisson*, 785 F.3d 553, 560 n.3 (11th Cir. 2015) (noting that "the smell of burnt marijuana emanating from a vehicle is sufficient probable cause to search a vehicle").

Deputy Matera's bare assertion that he smelled marijuana is as close to the probable cause line as it gets. The government has identified zero evidence to support it. Nevertheless, the district court credited Deputy Matera's testimony that he detected an "overwhelming" smell of marijuana coming from Wardlow's car, and we must accord that determination great deference. *See Walker*, 799 F.3d at 1363. The version of events that Deputy Matera described is not "contrary to the laws of nature, or . . . so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quotation marks omitted).

The district court provided specific justifications for crediting Deputy Matera's testimony, including Deputy Matera's extensive training and experience with marijuana as a police officer and respectful demeanor throughout the suppression hearing. "The absence of corroborating evidence, standing alone, does not permit us to reverse the credibility determination by the finder of fact." *United States v. Shabazz*, 887 F.3d 1204, 1216 (11th Cir. 2018). We will defer to the district court's credibility determination in this

case, but note that the government's justification for its search is remarkably weak.

Wardlow argues that the district court clearly erred by treating "an unsubstantiated 'hotboxing' theory" as dispositive although there was no evidence that he was impaired or that marijuana had been present in the vehicle, and Deputy Matera said that he could not differentiate between burned and fresh marijuana. The district judge acknowledged the lack of marijuana in Wardlow's car, but concluded that it did not "defeat[] or minimize[]" Deputy Matera's credibility. Then, after drawing upon his personal experiences with smelling marijuana in "packed" county courtrooms and enclosed airplane cabins, the district judge cited "hotboxing" as a possible reason for a lack of physical evidence.

While "triers of fact are . . . free to employ their common sense and to take into account the lessons of common, ordinary experience," *United States v. Arrasmith*, 557 F.2d 1093, 1094–95 (5th Cir. 1977), it is not clear from the record what specific experience the district judge drew upon for his "hotboxing" theory. Nevertheless, he did not cite that unsupported theory as the sole reason for crediting Deputy Matera's testimony, and he further noted that Wardlow offered no evidence to contradict Deputy Matera's version of events.

For the first time on appeal, Wardlow also argues that "[e]ven if Deputy Matera's testimony was credible, the odor of marijuana alone was insufficient probable cause to search." He asserts that Florida's recent legalization of medical marijuana and hemp

negated probable cause, as Florida law applies to traffic stops made by state police on state roads. We disagree with the government that Wardlow invited any error with respect to this argument in the district court, but nonetheless conclude that Wardlow cannot demonstrate plain error.

The probable cause standard "does not require officers to rule out . . . innocent explanation[s]" for a defendant's conduct. *D.C. v. Wesby*, 583 U.S. 48, 61 (2018); *see, e.g.*, *United States v. Clark*, 32 F.4th 1080, 1088 (11th Cir. 2022) ("[T]he question is not whether there is an innocent explanation for [the defendant's] behavior, but rather whether there was probable cause . . . ."). So, even if the scent Deputy Matera originally detected was that of hemp or medical marijuana, Wardlow's "post-hoc innocent explanation for [his] incriminating behavior does not vitiate [the] finding of probable cause." *United States v. Lebowitz*, 676 F.3d 1000, 1011 (11th Cir. 2012); *see also Bruce*, 977 F.3d at 1116 ("For a plain error to have occurred, the error must be one that is obvious and is clear under current law." (quotation marks omitted)).

Thus, we accept the district court's factual findings as not clearly erroneous, and we conclude that the objective circumstances—Wardlow's driving 20 miles per hour over the posted speed limit and Deputy Matera's detection of the "overwhelming," persistent odor of marijuana coming from the car—justified the search of Wardlow's vehicle if Deputy Matera testified credibly, as the district court found. *Lanzon*, 639 F.3d at 1300; *see also Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997) ("Probable cause

issues are to be decided on an objective basis by courts without regard to the subjective beliefs of law enforcement officers, whatever those beliefs may have been."); *see* Fla. Stat. § 316.193(1) (defining the elements of driving under the influence under Florida law).

## IV. CONCLUSION

For the reasons stated above, we **AFFIRM** the denial of Wardlow's suppression motion.