[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-12642

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

GREGORY LAMARCUS GREEN,

Defendant- Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:23-cr-00101-AMM-GMB-1

_____

Before BRASHER, ABUDU, and KIDD, Circuit Judges.

PER CURIAM:

Gregory Green was sentenced to 15 months of imprisonment after he pleaded guilty to possessing a firearm as a convicted felon. He now appeals the district court's denial of his motion to suppress physical evidence obtained during a traffic stop. After careful review, we affirm.

## I. BACKGROUND

On the evening of November 16, 2022, Officer Christopher Brown with the Homewood Police Department observed a vehicle without a functioning tag light. Officer Brown followed the car, ran the license plate number through his onboard computer, and learned that the car's registered owner, Gregory Green, had an outstanding felony warrant. Officer Brown saw that the vehicle did not use a signal as it turned into a Motel 6 parking lot, so he activated his blue lights for a traffic stop.

Once the vehicle stopped, Officer Brown instructed the driver to roll down his window, but the driver opened his door instead, explaining that his window did not work. Officer Brown told the driver that his tag light was out, which was "not a big deal," asked for his license and registration, and explained that he would likely just issue a verbal warning if the license checked out. The driver further denied having any firearms in the car. From the license, Officer Brown confirmed that the driver was Green, so he returned to his patrol car and waited for another officer to arrive

before speaking further with Green. Officer John Boockholdt soon arrived as backup. Officer Brown informed him that Green's "car reek[ed] of weed," that Green had a warrant, and that Green had been "reaching a little bit" for something inside his car, potentially in an effort to hide something.

Officer Brown then went back to the driver's side of Green's car, where Green had already opened the door, and instructed Green to show them his hands and step out of his car. At the same time, Officer Boockholdt opened the front passenger door. While removing Green from the car, Officer Brown informed him of his active warrant and asked, "How much weed [wa]s in the car?" Green replied, "Weed?" Brown responded that he "smell[ed] it," began handcuffing Green, and again asked, "How much weed is in the car?" When Green did not answer, Brown stated, "I'm gonna search it so, I mean, we're kind of past that point 'cause your car reeks, alright." Green remained silent when Officer Brown again inquired about the possibility of firearms in the car.

Brown then retrieved his police dog, Titan, and brought him to Green's car to conduct "a free-air sniff" for the presence of marijuana. When Titan began his sniffs, the driver's door and front-passenger's door of the vehicle were still open from when the officers had removed Green from the vehicle moments earlier. Officer Bookholdt also opened the rear passenger-side door just prior to the dog sniffs.

Titan first approached the open driver's door and put his front paws and head into the cabin (the "First Intrusion"). Titan

and Brown then travelled counterclockwise around Green's car, until Titan encountered the open rear passenger-side door, where he again put his front paws and head into the cabin (the "Second Intrusion"). Titan then walked to the front passenger-side area and put his head and front paws into the car (the "Third Intrusion"). Following an additional circle around the vehicle, Officer Brown interpreted a final alert Titan made as confirming the presence of marijuana in Green's car. The officers then searched Green's car and discovered under the front passenger's seat a firearm that had previously been reported stolen. They also found in the back seat a backpack containing marijuana, ecstasy, and hydrocodone.

In March 2023, Green was indicted for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He moved to suppress, among other things, the evidence obtained from his traffic stop. He argued that officers violated his Fourth Amendment rights when Titan physically entered the car during his free-air sniff. Green further contended that Titan did not actually perform a free-air sniff because of his entries into the car. The government opposed Green's motion and argued, in relevant part, that Officer Brown had probable cause to search Green's car before Titan's sniffs because he detected the smell of marijuana.

At a suppression hearing, the government submitted video evidence of the traffic stop and offered testimony from Officer Brown. Officer Brown explained that, when he directed Green to roll down his window, he could see Green moving around through the back windshield, so he suspected that Green was trying to hide

something even before speaking with him. Also, after Officer Brown asked if there were any firearms in the car, Green turned, looked at the passenger side of his car, and gave a "non[-]answer," which led Officer Brown to conclude that there was a "high likelihood" that Green had a firearm in his car.

Officer Brown further confirmed that he smelled marijuana when he first approached Green's car, and he was familiar with the scent from the "[n]umerous" cases he had worked. He did not immediately tell Green that he had smelled marijuana because he wanted to wait for backup. Officer Brown was concerned about safety, as he knew that Green had a felony warrant, he had observed Green moving inside the car, and Green had provided a non-answer about whether he had a gun. When Officer Bookholdt arrived on the scene, Officer Brown explained the situation, including that he had smelled marijuana, and that he planned to detain Green and "move forward with the traffic stop." He also wanted Titan to "confirm what [he] already smelled coming from the vehicle."

Officer Brown conceded that his report filed after Green's traffic stop did not mention the marijuana he smelled when approaching the vehicle. However, he maintained that he did not purposely exclude this information from his report. He additionally admitted that if Titan had not alerted to the presence of marijuana, he "would[] [not] have searched the vehicle."

Following submission of post-hearing briefs, a magistrate judge issued a report and recommendation ("R&R") that

recommended denying Green's motion to suppress. The magistrate judge determined that Brown had probable cause to search Green's vehicle because he had smelled marijuana coming from the car upon his initial approach. The magistrate judge further determined that Officer Brown's testimony at the suppression hearing was fully credible and consistent with the video evidence. Notwithstanding this finding, the magistrate judge also addressed the constitutionality of Titan's intrusions into Green's car. The magistrate judge explained that the First and Third Intrusions were constitutional, as "the front doors were opened for legitimate reasons unrelated to Titan's work." However, the magistrate judge concluded that, had the smell of marijuana not already established probable cause, Titan's Second Intrusion would have violated the Fourth Amendment because Officer Boockholdt's opening of the rear passenger-side door facilitated Titan's actions.

Green objected to the R&R. As relevant here, he maintained that Titan did not conduct a free-air sniff because he was not limited to the exterior of the car. Green further challenged the crediting of Officer Brown's testimony about smelling marijuana because he required Titan's confirmation before conducting the search.

The district judge adopted the R&R and overruled Green's objections, finding that he "d[id] not argue that the magistrate judge's [R&R] contained any factual errors or relied on improper law[,]" but instead "disagree[d] with the magistrate judge's weighing of the evidence and ultimate legal conclusion based on that

evidence." Green thereafter entered a conditional guilty plea, preserving his right to appeal the denial of his suppression motion. He was sentenced to 15 months of imprisonment with 3 years of supervised release. This appeal followed.

## II. STANDARD OF REVIEW

"A denial of a motion to suppress involves mixed questions of fact and law." *United States v. Campbell*, 26 F.4th 860, 870 (11th Cir. 2022) (en banc) (quotation marks omitted). Thus, we review the district court's findings of fact for clear error and its application of law to those facts *de novo*. *Id*. "We construe all facts in the light most favorable to the party who prevailed in the district court and give 'substantial deference to the factfinder's credibility determinations, both explicit and implicit.'" *United States v. Walker*, 799 F.3d 1361, 1363 (11th Cir. 2015) (quoting *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012)).

## III. DISCUSSION

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV. Under the exclusionary rule, evidence cannot be used against a defendant in a criminal trial if it was obtained through an encounter with police that violated the Fourth Amendment. *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003).

Generally, police officers must obtain a warrant supported by probable cause to justify a search under the Fourth Amendment. *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005). However, the automobile exception allows police to conduct a

warrantless search of a car if (1) it is readily mobile and (2) there is probable cause to believe that it contains contraband or evidence of a crime. *United States v. Lanzon*, 639 F.3d 1293, 1299–300 (11th Cir. 2011). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in the vehicle under the totality of the circumstances." *Id.* at 1300.

On appeal, Green does not dispute that his car was readily mobile, as Officer Brown saw him driving immediately before the search. *Id.* Green instead challenges whether Officer Brown had probable cause to believe that his car contained contraband. He contends that the district court clearly erred by "independently and alternatively" concluding that Officer Brown had probable cause to search his car based on smelling marijuana. Green argues that this finding was contrary to Officer Brown's testimony, body camera video, and police report.

We have previously held that an officer's credible testimony that he smelled marijuana establishes probable cause to search a vehicle. *See United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc) ("There is no doubt that the agent's suspicions rose to the level of probable cause when, as the door stood open, he detected what he knew from his law enforcement experience to be the odor of marijuana."); *see also United States v. Johns*, 469 U.S. 478, 482 (1985) ("After the officers came closer and detected the distinct odor of marihuana, they had probable cause to believe that the vehicles contained contraband."); *Merricks v. Adkisson*, 785 F.3d 553, 560 n.3 (11th Cir. 2015) (noting that "the smell of burnt marijuana

emanating from a vehicle is sufficient probable cause to search a vehicle").

Here, the district court credited Officer Brown's testimony that he detected the smell of marijuana when he first approached Green's vehicle, a determination to which we give great deference. *See Walker*, 799 F.3d at 1363. This version of events is not "contrary to the laws of nature, or . . . so inconsistent or improbable on its face that no reasonable factfinder could accept it," as it is corroborated by the video evidence documenting the traffic stop. *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quotation marks omitted). Accordingly, we accept the district court's factual determinations as not clearly erroneous, and we conclude that, once Officer Brown smelled marijuana coming from Green's car, he had probable cause to search the vehicle. *Lanzon*, 639 F.3d at 1300.

It is true that Officer Brown used Titan to confirm his suspicions before conducting the search, stated that he would not have searched the car but for Titan's alert, and failed to mention the smell of marijuana in his reports filed after the traffic stop. While police "do not have unfettered authority to detain a person [during a traffic stop] indefinitely," *Campbell*, 26 F.4th at 881, there is no requirement that a warrantless search of a vehicle occur strictly contemporaneously with the establishment of probable cause, *see Texas v. White*, 423 U.S. 67, 68 (1975). Because Officer Brown had no immediate obligation to search Green's car, his diligent choice to have Titan first confirm the presence of marijuana did not

undermine his previous probable-cause determination. *See Campbell*, 26 F.4th at 881.

Officer Brown's concession about relying on Titan's alert to justify his search is also immaterial to the instant probable-cause analysis, as the objective circumstances—Officer Brown's immediate detection of the smell of marijuana when he approached Green's car—justified the subsequent search. *See Lanzon*, 639 F.3d at 1300; *Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997) (en banc) ("Probable cause issues are to be decided on an objective basis by courts without regard to the subjective beliefs of law enforcement officers, whatever those beliefs may have been."). Further, Officer Brown's failure to mention the smell of marijuana in his police report is irrelevant because his body camera video confirms that, prior to the search, he stated that he smelled marijuana emanating from Green's car.

For the first time on appeal, Green further suggests that "the smell of marijuana alone cannot be an adequate basis to support probable cause where the smell of hemp, [a substance] which is legal in Alabama, is indistinguishable from the smell of marijuana." Green did not include this specific argument in any of his filings before the district court, including his objections to the magistrate judge's R&R. *See* 11th Cir. R. 3-1. But even if we assume that Green did preserve this challenge to the district court's probable-cause findings, we conclude that it is meritless.

The probable cause standard "does not require officers to rule out . . . innocent explanations" for a defendant's conduct. *D.C.*

*v. Wesby*, 583 U.S. 48, 61 (2018); *see, e.g.*, *United States v. Clark*, 32 F.4th 1080, 1088 (11th Cir. 2022) ("[T]he question is not whether there is an innocent explanation for [the defendant's] behavior, but rather whether there was probable cause . . . ."). So, even if the scent Officer Brown originally detected was that of hemp rather than marijuana, Green's "post-hoc innocent explanation for [his] incriminating behavior does not vitiate [the] finding of probable cause." *United States v. Lebowitz*, 676 F.3d 1000, 1011 (11th Cir. 2012).

Because we conclude that Officer Brown had probable cause to search the vehicle prior to Titan's sniffs, we need not address Green's remaining arguments regarding the reliability of Titan's alerts, whether Titan's intrusions into the car violated the Fourth Amendment, or whether his statements to law enforcement were due to be suppressed as fruit of the poisonous tree.

## IV. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's denial of Green's motion to suppress.